# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-KA-00398-SCT

*RAYMOND LIGGINS, a/k/a RAYMOND R. LIGGINS*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/95 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MERRIDA P. COXWELL, JR. |
| | CHARLES R. MULLINS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED-12/10/98 |
| MOTION FOR REHEARING FILED: | 2/19/98 |
| MANDATE ISSUED: | 12/17/98 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. On February 5, 1998, we issued an unpublished opinion from which Liggins filed the instant Motion for Rehearing. The motion for rehearing is granted. The original opinion is withdrawn and this opinion is substituted therefor. At issue is whether the Warren County Circuit Court, Judge Frank G. Vollor presiding, erred in granting a flight instruction and a *Hornburger* instruction in the trial below. Upon consideration of such issues, we reverse and remand this case for proper trial procedures.

### Procedural History and The Facts

¶2. Raymond Liggins, was indicted jointly with Bernard Brown, in Cause No. 11,966-V, for aggravated assault [Count I] and armed robbery [Count II]. On September 1, 1995, Liggins was found guilty by a jury on both counts, with the jury being unable to agree on life imprisonment in Count II. On September 14, 1995, the court, having entered judgment of conviction on the verdict, sentenced Liggins to concurrent

terms of 20 years imprisonment with 5 years thereof suspended, for the aggravated assault [Count I], and 30 years imprisonment with 10 years thereof suspended, for the armed robbery [Count II]. Liggins filed a Motion for Judgment Notwithstanding the Verdict, or in the Alternative a New Trial, both of which were denied. Liggins subsequently filed a timely Notice of Appeal. Liggins argues we erred as to the following issues:

> **II. WHETHER THE TRIAL COURT ERRED IN GRANTING A FLIGHT INSTRUCTION OVER DEFENSE OBJECTION, THEREBY VIOLATING LIGGINS'S DUE PROCESS RIGHT TO A FAIR AND IMPARTIAL TRIAL UNDER THE FEDERAL AND STATE CONSTITUTIONS?**

> **IV. WHETHER THE TRIAL COURT ERRED BY GRANTING STATE JURY INSTRUCTIONS S-1, S-3, AND S-4 NECESSITATING A REVERSAL?**

¶3. The evening of September 23, 1994, Wilburn Moffet, Jr., co-manager of a Vicksburg A&P Sav-A-Center, worked after hours to prepare the night deposit. Between 10:30 and 11:00 p.m., Moffett locked the store and went out to his car with the deposit. He saw two men running toward him from around the side of the building. He ran for his car, got in, and slammed the door. At this time, he heard one gunshot which flattened one of the tires of his car. About two seconds later, a second gunshot went off which shattered the window of his car. He played dead and rolled over on the money, but Bernard Brown, who had the shotgun, reached into the car and took the money bag, which contained about $13,000.00. The two men then ran towards the woods. After the robbery, Moffett went back into the store. Moffett could describe neither of the robbers, except that they were black males and one of them was wearing a stocking cap. Further, Moffett received some minor cuts to the front of his face which required medical treatment.

¶4. Detective Naylor was parked a short distance away at a service station. He heard the gunshots and proceeded to the Sav-A-Center. He saw three people running, stopped one of them, Freddie Stewart, who was a bystander not implicated in the crime, and asked him what was happening. Naylor then went to the store and learned that Moffett had been robbed. Naylor immediately broadcast the robbery on the police radio and called for assistance.

¶5. Officers Cooper and Watt were on patrol when they heard Naylor's radio report. The two suspects split up when they realized they had been spotted by police officers; the second suspect was running on Clay Street towards Trustmark Bank and the County Market store. Officer Cooper got out of the patrol car and apprehended the first suspect, Bernard Brown, who had the bank bag in his possession. Upon apprehending Brown, officers attained both a stocking and a shirt he was wearing inside-out. Naylor also found a stocking cap along the path taken by the suspects. Brown later testified that Raymond Liggins was with him, conceived the plan, solicited Brown's participation, and provided the car and the shotgun.

¶6. Officer Cooper broadcast the second suspect's direction of travel and description of him as medium build and wearing blue jeans and a red and blue shirt. Officer Jackson, who was also on patrol in that area that night, proceeded to the wooded area behind the County Market, where he was joined by Officer Combes. Officer Jackson observed a man running at full speed across the St. Aloysius campus. Jackson made a foot pursuit and followed this individual from the campus down Howard Street towards Poplar Street. At the intersection of Lynn Street, Officer Jackson said an individual ran into the wooded area behind the Vicksburg Church of Christ. According to Jackson, the individual was wearing a red and dark colored vertical striped shirt and long blue jeans. He broadcast this information and asked for assistance

before going into the woods after the suspect. While he was waiting, he heard over the radio that other officers had apprehended the second suspect.

¶7. Officers Hall and Bryant also were on patrol in the area. Hall had Bryant let him out of the car on Fourth North Street where Officer Hall figured he could help surround the suspect. He heard a fence rattle behind a detail shop on North and Grove Streets and saw an individual who was wearing a pink and blue striped shirt jump a fence. The individual was running very fast. About a block from St. Aloysius, Hall grabbed the suspect and recognized him as Raymond Liggins. Liggins pulled away from Hall and ran into a wooded area and into a bayou, where Hall lost sight of him. Officers Hall and Bryant found both a pistol and Liggins under a hollow log near the bayou.

¶8. At the time of his arrest, Liggins was muddy and wet and was wearing blue jeans and a red-and-blue striped shirt. Later, Officers Jackson and Hall identified the striped shirt while Officer Watts confirmed, by sex, race, build, and clothing that Liggins appeared to be the suspect he had observed running on Clay Street.

¶9. Liggins and several witnesses testified that, until it was broken up by police, Liggins attended a party at Monise Bester's house the evening in question. The party at issue was typical for a party hosted by the Besters--attendees drank and gambled. Liggins, not the only party attendee wearing a striped shirt, arrived between 9:00 and 9:15 p.m. Once the police arrived, several people ran off, including Liggins. Liggins testified that he ran from the house both because the police habitually harass he and his friends and because he did not want to be charged with a crime, such as open container or gambling. Liggins chose to hide from the police because he was carrying a pistol.

### The Flight Instruction Issue

¶10. At trial, Liggins's counsel specifically objected to the deliverance of the flight instruction by pointing out that more than one incident could have been reason for the flight. This Court has established that flight generally is admissible as evidence of consciousness of guilt. *Fuselier v. State*, 702 So. 2d 388, 390 (Miss. 1997) [hereinafter *Fuselier III*]; *see also Williams v. State*, 667 So. 2d 15, 23 (Miss. 1996). Yet, pursuant to such an objection, this Court reasons that "an instruction that flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge." *Fuselier v. State*, 468 So. 2d 45, 56-57 (Miss. 1985) [hereinafter *Fuselier I*], *see also Reynolds v. State*, 658 So. 2d 852, 856 (Miss. 1995). When determining whether a flight instruction is appropriate, we further have explained that two considerations are paramount: (1) only unexplained flight merits a flight instruction; and (2) flight instructions are to be given only in cases where that circumstance has considerable probative value. *Banks v. State*, 631 So. 2d 748, 751 (Miss. 1994); *Pannell v. State*, 455 So. 2d 785, 788 (Miss. 1984); *Tran v. State*, 681 So. 2d 514, 519 (Miss. 1996); *see also Mack v. State*, 650 So. 2d 1289, 1308 (Miss. 1994); *and see Brown v. State*, 690 So. 2d 276, 294 (Miss. 1996). A flight instruction is appropriate where flight is "highly probative" to the facts of the particular case. *Fuselier III*, 702 So. 2d at 390. Evidence of flight is inadmissible where, as in this case, there is an independent reason for flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant. *Id.* Indeed, in *Fuselier I*, we stated the turning principle in this case:

> Fuselier was obviously put in a no-win situation by either being required to explain his flight and the fact that he was a prison escapee or not explaining the flight and subjecting himself to a flight

instruction. Here, because the court was aware of an explanation for Fuselier's flight, which was at that time inadmissible, we are of the opinion that the flight instruction should not have been granted.

*Fuselier I*, 468 So. 2d at 57.

¶11. Plenty of evidence exists that Liggins may not have known from what he was fleeing. The record reflects Liggins's concern about carrying a weapon, gambling, drinking, and involvement with drugs, not to mention the counts on which this case is based. The record further reflects that Liggins was "under indictment in Cause Number 11,960-V from October 1994 for sale of cocaine as an offense that happened on August the 12th, 1994." Given such prejudicial information, Liggins's September 23 flight may have been from guilt of selling cocaine, rather than the counts at issue in this case.

¶12. This case is best summed by our own words:

> . . . To paraphrase previous considerations by this Court, no person accused, however angry the people, however evil the crime, regardless of how strong the appearance of guilt, can be denied the full protection of the law and a fair and orderly trial.

*Fuselier III*, 702 So. 2d at 394.

### The *Hornburger* Instruction Issue

¶13. The aider and abettor instruction charged by the trial court is virtually identical to that of ***Hornburger v. State***, 650 So. 2d 510 (Miss. 1995), a case in which we deemed that instruction erroneous.

¶14. In ***Hornburger***, the objectionable instruction, S-8, stated:

> The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you find from the evidence beyond a reasonable doubt that the defendant, Gregory Hornburger, a/k/a Greg Hornburger, did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of burglary of a building, or leading to its commission, then and in that event, you should find the defendant guilty as charged.

*Id.* at 513-14. This Court found this instruction erroneous, but deemed it harmless for purposes of case disposition. We found that S-1-A, the elements of burglary instruction, properly stated the law, thus curing any problems caused by S-8. In the instant case, the aider and abettor instruction, S-3, is virtually identical to that of ***Hornburger***:

> The court instructs the jury that each person present at the time, and encouraging the commission of a crime, and knowingly, wilfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to it [*sic*] commission, is as much a principal as if he had with his own hand committed the whole offense; and if you believe from the evidence, beyond a reasonable doubt, that the Defendant, Raymond R. Liggins, did wilfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of armed robbery, or the crime of aggravated assault, or immediately connected with those crimes, or leading to the commission of those crimes,

then and in that event, you shall find the Defendant, Raymond R. Liggins, guilty of armed robbery and/or the crime of aggravated assault.

¶15. Identifiable differences exist between the two instructions. In *Hornburger*, the jury was charged that if the requirements of the instruction were met, it normatively "should" find the defendant guilty. In the instant case, the jury was charged that it "shall"[1] find Liggins guilty. Further, *Hornburger*'s instruction required consent to be deemed a principal and found guilt to derive from an act which is an element of or leads to the commission of the crime. On the other hand, the instant case's instruction did not require consent for principal status while it deemed guilt to stem from an act immediately connected with the crimes, as well as an act which is an element of or leads to the commission of those crimes.

¶16. Both instructions are objectionable in their effect. In *Hornburger*, it was pointed out that "[instruction S-8] basically says if you find [the defendant] did any act which is an element of the crime of burglary, you shall find [the defendant] guilty as charged." *Hornburger*, 650 So. 2d at 514. As Liggins objected at trial, S-3 "lessens the burden of the State to prove every element of a crime by suggesting that if they can show any act which is an element of the crime, then the instruction directs them to find the defendant guilty." Liggins basically argued that the State must simply show an act which is an element of the crime, rather than prove every element, to require a jury to find a defendant guilty.

¶17. We found that the instruction in *Hornburger* was harmless error because of its sufficient sister instruction and because the term "should" was used as opposed to the "shall" utilized in the instant case. Further, *Hornburger*'s instruction required a greater burden on the state to prove the necessary elements, whereas the instant case's instruction, lessened the state's burden. *Hornburger* is not this case. It is reversible error in this case.

### Conclusion

¶18. For the aforementioned reasons, the trial court erred in its jury instructions as unreasoned flight and *Hornburger* instructions were given. Hence, this case is

**¶19. REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, ROBERTS, MILLS AND WALLER, JJ., CONCUR. PITTMAN, P.J., AND SMITH, J., NOT PARTICIPATING.**

1. "Shall" is defined in the law as being "mandatory". *See Black's Law Dictionary* 1375 (6th ed. 1990).