COLEMAN, JUSTICE,
FOR THE COURT:
¶ 1. A ' Panola County jury convicted James Douglas Willie of deliberate design murder. He now appeals the conviction and raises the following issues: (1) that the trial court erred in allowing the State’s ballistic expert to give definitive testimony matching bullets from the crime scene to a gun linked to Willie; (2) that his trial counsel provided ineffective assistance by failing to object to the ballistics testimony; (8) that the jury returned a guilty verdict against the overwhelming weight of the evidence; and (4) that the trial court improperly answered a question submitted by the jury. We hold that the judge erred in answering a question posed by the jury during deliberations and reverse Willie’s conviction and remand the case to the trial court for further proceedings.
FACTS
¶2. Nebraska resident Tom Schlender, age seventy-four, was killed while traveling on U.S. Interstate 55 (1-55) through Panola County, Mississippi, to pick up his grandson at a Bible college in Pensacola, Florida. Trooper Robert Anderson of the Mississippi Highway Patrol discovered Schlender’s body. Anderson testified that he received a call at 1:46 a.m. on May 8, 2012, to work a one-vehicle accident on I-55 near the Pope-Courtland exit. He- arrived at 2:07 a.m. and observed a red Ford pickup truck in the southbound lane with its driver’s side against thé guardrail in the median. The truck’s doors were closed. Anderson' opened the passenger’s-side door to talk to the driver, who was bloodied and had no pulse. Anderson noticed that the truck’s engine was running and the transmission was in drive.
¶ 3. Kit Wingert, a crime scene analyst with the Mississippi Bureau of Investigation, processed the crime scene. Wingert testified that the driver/victim had apparent gunshot wounds to his right hand, front left shoulder, back left shoulder, and the right side of his body. He testified that the truck’s front passenger’s-side and driver’s-side windows were broken out and there was a projectile defect on the passenger’s-side mirror. Five bullet holes were in the post between the driver’s-side door and the back door; two of the bullets had penetrated into the cab. Four nine-millimeter shell casings were found on I-55' several hundred feet north of the truck’s resting place. Wingert collected a projectile and- projectile fragments from several places inside the truck. He testified that the projectiles had come from the driver’s side of the truck. The medical examiner testified that he 'had identified *1272 five gunshot wounds to Schlender, including one close-range wound to the left shoulder. The medical examiner removed a bullet from Schlender’s right shoulder and a. loose bullet from the body bag in which he received Schlender’s body.
¶ 4. Albert Perkins of the Panola County Sheriffs Department testified that Willie’s mother lived about two and a half miles from the Pope-Courtland exit. Candace Rattler testified that she had been in a burgundy Chevrolet automobile with Willie in Tunica County, Mississippi, on May 15, 2012. Rattler testified that Willie had a gun with him and fired .it twice before putting it-in the glove compartment. Rattler could not identify Willie in the courtroom and testified that, in May 2012, Willie was heavyset and had braids. The State calle,d Bernadette Logan, a detective with the Tunica County Sheriffs Department. Logan testified that, in May 2012, Willie had been heavyset with braids, but since that time he had lost a substantial amount of weight and had changed his hairstyle.
¶ 5. Logan testified that, after talking with Rattler, she had recovered two nine-millimeter shell casings from Johnson’s Bottom Road in Tunica County. Another detective testified that he had found a burgundy Chevrolet vehicle at Willie’s apartment with a black, nine-millimeter, Ruger pistol in the glove compartment. The gun was unloaded, but a loaded clip was found over the driver’s-side sun visor.
¶ 6. Cedric Davis of the Tunica County Sheriffs Department testified that he had interviewed Willie on May 15, 2012. Davis testified that, at that time, Willie was heavier and wore two dreadlocks. Davis said that Willie had told him that the gun had been in his possession for approximately two weeks and that he had purchased it for his protection.
■ ¶7. Brian Mclntire, a forensic analyst with the Mississippi Crime Laboratory, was accepted as an expert in forensic firearm identification. Mclntire testified that he had examined the gun, the four shell casings found on 1-55, the bullet and fragments found in the truck’s cab, the two shell casings from Tunica County, and the bullets submitted by the medical examiner. Mclntire further testified that, in his'expert opinion, the four shell casings found on 1-55 were fired in the gun, two projectiles from the truck’s cab were fired in the gun, the two bullets collected by the medical examiner were fired in the gun and the two shell casings from Tunica County were fired in.the gun. He testified that some of the projectile fragments collected from the truck’s cab had the same class characteristics as the gun, but he was unable to identify them positively as having been fired in the gun.
¶8. Mclntire also testified about the methodology he used to reach his conclusions. He explained that, first, he test-fired the gun in the laboratory to produce test-fired bullets. He then examined the “test fires” to become familiar with their class characteristics and individual characteristics. Mclntire testified that “class characteristics” are the characteristics common to all firearms with the same model number and that the Ruger’s class characteristics were nine-millimeter caliber, six lands and grooves, and a right-hand twist. Mcln-tire testified that individual marks or striations are left on the bullet and cartridge case when a gun is fired, and that the “individual characteristics” are unique to a specific firearm. By using a comparison microscope to compare the individual characteristics of the test fires to the individual characteristics of the bullets associated with the crime, he said he was able to determine whether a particular projectile or shell casing was fired from a particular weapon. His results were reviewed by an *1273 other firearms identification expert at the Mississippi Crime Laboratory.
¶ 9. Willie did not challenge Mclntire’s qualifications or his conclusions. He presented no opposing expert testimony. On cross-examination, defense counsel asked whether Mclntire had a margin of error for his results. , Mclntire responded that he had no margin of error but admitted that he is not infallible.
¶ 10. Willie testified and denied that he had killed Schlender. He testified that he had purchased the gun “off the streets” in Memphis, Tennessee, for his protection. He admitted that he had told investigating authorities that he had purchased it approximately two weeks before he was questioned, but he stated that the word “approximately” meant that he could have had it for days, weeks, or months. On cross examination, Willie testified that he had bought the gun on May 13, 2012, after the murder. Indeed, his defense at trial had nothing to do with challenging the State’s assertion that the gun in question was the murder weapon. Instead, he testified that he did not possess the gun until after the crime, and that the real murderer must have sold the gun after committing the murder.
DISCUSSION
I. Whether the trial court erred in allowing the State’s ballistics expert to testify that the shell casings and bullets were fired by the gun recovered from the car belonging to Willie’s girlfriend.
¶ 11. Willie argues that the trial court erred in permitting Mclntire to testify conclusively that the shell casings'and bullets came from Willie’s gun. Willie argues that Mclntire should have been allowed to testify only that the bullets and shell casings were consistent with having been fired from the pistol. He further contends that Mclntire’s testimony should have been so limited because a consensus exists within the scientific and legal communities that bullets and shell casings cannot be matched to a specific firearm with absolute certainty.
¶12. Mississippi Rule of Evidence 702, which governs the admissibility of expert testimony, provides:
[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
M.R.E. 702. Under Rule 702, expert testimony must be both, relevant and reliable. Corrothers v. State, 148 So.3d 278, 294 (Miss. 2014); see Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), Under the relevance prong, the evidence must “assist the trier of fact to understand the evidence or to determine a fact in issue.” Id. (quoting Daubert, 509 U.S. at 591, 113 S.Ct. 2786). Testimony is reliable when ⅛ is ‘based upon sufficient facts or data,’ is ‘the product of reliable principles and methods,’ and when ‘the witness has applied the principles and methods reliably to the facts of the case.’” Corrothers, 148 So.3d at 294 (quoting M.R.E. 702). The court may consider the nonexaustive factors to assess reliability: “whether the expert’s theory can be or has been tested; whether the theory has been the subject of peer review and- publication; the known or potential rate of error of the technique or theory *1274 when applied;' the existence of standards to control the technique’s operation; and the general acceptance the theory has garnered in the relevant expert community.” Flowers v. State, 158 So.3d 1009, 1030 (Miss, 2014), cert. granted, judgment vacated on other grounds, — U.S. —, 136 S.Ct. 2157, 195 L.Ed.2d 817 (2016). The trial court’s focus in assessing reliability must be on principles and methodology, not on the conclusions generated. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 36-37 (Miss. 2003). The trial court’s role concerning expert testimony is that of gatekeeper: “it must make a preliminary assessment regarding the scientific validity of the reasoning or methodology underlying the expert testimony and the proper application of that reasoning or methodology to the facts of the case at issue.” Union Carbide Corp. v. Nix, Jr., 142 So.3d 374, 388 (Miss. 2014). The Supreme Court reviews the trial court’s admission or exclusion of expert testimony for abuse of discretion. Corrothers, 148 So.3d at 295.
¶ 13. Willie contends that Mcln-tire’s testimony matching the bullets and shell casings to the gun associated with Willie was unreliable because the science of forensic firearm and toolmark identification does not permit identifications to be made with absolute certainty. However, Willie did riot object to Melntire’s testimony. A party who believes expert testimony to be inadmissible is required to make a timely objection to the admission of such testimony into evidence. Hyundai Motor Am. v. Applewhite, 53 So.3d 749, 755 (Miss. 2011). According to Mississippi Rule of Evidence 103(a)(1):
Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and .... [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context ....
M.R.E. 103(a)(1). If the complaining party fails to object to expert testimony, then error predicated on its admission is procedurally barred from consideration on appeal. Brown v. State, 890 So.2d 901, 915 (Miss. 2004). Willie did not object to Mcln-tire’s testimony; therefore, the issue is procedurally barred.
II. Whether Willie’s trial counsel rendered constitutionally ineffective assistance of counsel in failing to object to the testimony of the State’s ballistics expert.
¶ 14. As we hold above, the failure of Willie’s trial counsel to object to the ballistics testimony bars the issue - from consideration on appeal. Willie next argues that the failure of his trial counsel to object amounts to ineffective assistance of counsel in violation of his constitutional right to counsel. We disagree.
¶ 15. Both the United States Constitution- and the Mississippi Constitution provide a defendant a right to the effective assistance, of counsel. U.S. Const. Amends. VI, XIV; Miss. Const. Art. 3, § 26; Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove deficient performance, the defendant rriust show that counsel’s performance “fell below an objective standard of reasonableness.” Id. at 688, 104 S.Ct. 2052. There is a strong presumption that counsel’s performance fell “within a wide range of reasonable professional assistance” and was the product of sound trial strategy. Id. at 689, 104 S.Ct. 2052. However, counsel’s performance must have been reasonable considering the totality of the circumstances. Id. at 688, 104 S.Ct. 2052. An evaluation of the reasonableness of counsel’s conduct must be made “on the facts of *1275 the particular case, viewed as of the time of counsel’s conduct.” Id. at 690, 104 S.Ct. 2052. To succeed on a claim of ineffective assistance of counsel, the defendant must show that counsel’s performance was deficient and that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
¶ 16. In Neal v. State, 15 So.3d 388 (Miss. 2009), the defendant, Jermaine Neal, argued on appeal that,' among other things, his trial attorney’s failure to object to hearsay testimony rendered his performance constitutionally' defective. The Neal Court rejected his argument, writing, “Neal’s assertions that defense counsel failed to object to hearsay and jury instructions and failed to make timely objections are all protected as within the realm of trial strategy.” Id. at 406 (¶43). The Neal Court continued, “The decision to ‘make certain objections fall[s] within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim.’ ” Id. (quoting Spicer v. State, 973 So.2d 184,203 (Miss. 2007) (quoting Powell v. State, 806 So.2d 1069, 1077 (Miss. 2001))).
¶17. After a George County jury convicted him of capital murder and sentenced him to death, Fred Spicer sought post-conviction relief in Spicer v. State, 973 So.2d 184 (Miss. 2008). Spicer contended that his trial counsel rendered ineffective assistance due to a failure to object to the prosecutor’s closing argument during the sentencing phase of the trial. The prosecutor argued as follows:
He is either going to die in prison, which is a death penalty, and the State is going to support him forth [sic] the next 50 years until he dies, with our tax dollars, or he will die sooner. Either way, it’s a death penalty. And I submit to you, why should he be allowed to sit for the next 50 years and watch TV and have friendships- and to have associations and to have hope and to have all the things that living people have when Edmond Hebert is dead?
Spicer, 973 So.2d at 203. Citing the principle that decisions regarding objections at trial fall within the “ambit of trial strategy,” the Spicer Court held Spicer’s argument to be meritless.
¶ 18. In Cole v. State, 666 So.2d 767 (Miss. 1995), the Court rejected the defendant’s contention that counsel had been ineffective for failing to object to certain testimony. Id. at 777. The Court noted that the decision not to object could have been based in a desire not to draw unwanted attention to the testimony in question. Id. The same could be said of the decision of Willie’s counsel not to object, or it could be that counsel did not want to give the State an opportunity to rephrase the question into the stronger-sounding, correct form.
¶ 19. Relying on Neal, Spicer, and Cole, we hold that the decision not to object to the form of the prosecutor’s questions to the State’s expert falls within the scope of trial strategy and did not constitute defective representation.
III. Whether the jury returned a guilty verdict against the overwhelming weight of the evidence.
¶ 20. Willie next contends that the jury’s verdict was against the overwhelming weight of the evidence. Appellate review of the denial of a motion for a new trial based on the weight of the evidence requires the Court to view the evidence in a light most favorable to the verdict, and the verdict will be disturbed only “when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶18) (Miss. 2005) (citation omitted)). Further, “[a] reversal on the *1276 grounds that the verdict was against the overwhelming weight of the evidence ... ‘does not mean that acquittal was the only-proper verdict.’ ” Id. (quoting McQueen v. State, 423 So.2d 800, 803 (Miss. 1982)). A new trial should be granted only in “exceptional cases in which the evidence preponderates heavily against the verdict.” Smith v. State, 925 So.2d 825 (Miss. 2006) (citing Bush, 895 So.2d at 844).
¶21. Willie argues that the verdict is against the overwhelming weight of the evidence because the testimony of the ballistics expert was improper. His contention amounts to nothing more than an attempt to demonstrate error on a matter as to which he failed to object at trial.
Raising objections in a motion for new trial which should have been made at trial has never been thought to cure the failure to object at the proper time. Barnett v. State, 725 So.2d 797, 801 (Miss. 1998). It is axiomatic that a litigant is required to make a timely objection. Id. We have-repeatedly held that if no contemporaneous objection is made, the error, if any, is waived. Walker v. State, 671 So.2d 581, 597 (Miss. 1995) (citing Foster v. State, 639 So.2d 1263, 1270 (Miss. 1994)). This rule’s applicability is not diminished, even in a capital case. Id.
Smith v. State, 797 So.2d 854, 856 (¶7) (Miss. 2001). The issue is without merit.
IV., Whether the trial court erred in answering a question from the . jury.
¶ 22. During deliberations, the jury submitted a note' to the trial judge asking, “Sir, can we say he is guilty of having the gun without saying he is guilty of murder.” The. trial judge responded by writing, “No,” on the note and sending it back to the jury. The only charge against'Willie at trial, and the only charge as to which the jury was instructed and could have found him guilty, was deliberate design murder. No second gun charge was lodged against Willie. On appeal, Willie contends that the trial judge’s response equates to a peremptory instruction if the jury found Willie guilty of a gun charge. He contends that the judge’s response to the jury’s question amounted to instructing the jury that no, it could not find Willie possessed the gun without also finding him guilty of murder.
¶23. Rule 3.10 of the Uniform Rules of Circuit and County Court Practice provides as follows:
If the jury, after they retire for deliberation, desires to be informed of any point of law, the court shall instruct the jury to reduce its question to writing and the court' in its discretion, after affording the parties an opportunity to state their objections or assent, may grant additional written instructions in response to the jury’s request.
Accordingly, we review the trial judge’s additional written instructions in response to a question from the jury for an abuse of discretion. See also Galloway v. State, 122 So.3d 614, 634 (¶ 36) (Miss. 2013). Unless the trial judge based his response to the note on an incorrect interpretation of the law, we may not reverse for an abuse of discretion unless the trial court’s handling of the matter was arbitrary and clearly erroneous. Galloway, 122 So.3d at 634 (¶ 36). As more fully developed below, the trial judge’s response incorrectly interpreted the law, in that it allowed the jury to find Willie guilty of murder if the jury believed him “guilty” of possessing the gun.
¶24. In appeals involving notes from juries, we often quote Girton v. State, 446 So.2d 570 (Miss. 1984), in which the Court wrote the following:
*1277 One of the most nettlesome problems faced by a circuit judge is an inquiry from the jury when it has retired to reach its verdict. The ensuing colloquy between the judge and jury, or instruction resulting therefrom, or both, have been one of the grounds of many appeals to this Court.
We really cannot lay down hard and fast legal principles to govern the myriad circumstances in which a problem may arise.
The patient and attentive judge has heard the evidence, following which he has diligently endeavored to instruct the jury on every possible relevant aspect of the case to guide this body in its deliberations. Having done so, and while he, the parties, and their counsel await the verdict, the judge is called upon to answer some question a juror has about the case. '
What is he to do? In deference we offer some common sense suggestions.
Our first recommendation is that the circuit judge determine whether it is necessary to give any further instruction. Unless it is necessary to give another instruction for clarity or to cover an omission, it is necessary that no further instruction be given.
Of course, a circuit judge may realize such a necessity even in the absence of an inquiry from the jury, and under such circumstances quite properly may give the jury additional written instructions. See Wages v. State, 210 Miss. 187, 49 So.2d 246.(1950).
The second recommendation requires the trial judge to constantly bear in mind that justice in every trial requires communication and understanding. Unless words are clearly understood, there is only a communication of sound, or worse, a distinct possibility of the receiver of the information placing a different meaning on what is spoken or written than the author meant. This is critical in any communication from the circuit judge to the jury, or between the judge and jury.
Therefore, a judge should make absolutely certain he understands precisely what is meant in any inquiry from the jury. Unless he is quite certain precisely what the jury means in its inquiry, how can the judge know he is responding properly? .
Girton, 446 So.2d at 572-573. The conversation between the trial judge, the district attorney (Champion), and defense counsel (Walker), upon receipt of the note, was brief and went as follows:
THE COURT: All right. I got a note ' from the jury and the jury has a question. And it says, “Sir, can we say he is guilty of having the gun without saying he is guilty’ of murder?”
So, I’m going to respond, “No, you cannot,” and send it back.
Mr. Walker?
MR. WALKER: Well, Judge, that would be a lesser included charge, possession of a firearm by a felon.
MR. CHAMPION: They—there’s no proof in front of them of that.
. THE COURT: Well, there’s been—
MR. CHAMPION: Plus, they have no—
THE COURT:—no lesser included instruction, no—I mean, this is simple murder—
MR, WALKER: I understand,’Judge.
THE COURT:—and it’s going to be either a guilty or not guilty or hung jury.
MR. CHAMPION: I think, the response will be, “You must find him either guilty or not guilty of murder.”
THE COURT:. Okay. I’m just going to say, • No, you cannot. You can just ei *1278 ther—murder—you know, guilty or not guilty. Okay. (Wrote on note.)
One word response, “No.” I figured the more I write, the more I’ll confuse them. All right. Pee Wee, if you’ll hand that back to them.
BAILIFF JOHNSON: All right, sir.
¶ 25. Like the Girton Court, we cannot be sure what the jury meant by its question. Girton, 446 So.2d at 573 (“While this Court believes we have some understanding of what was troubling this juror, we must at the same time concede we are not sure.”) While the trial judge and attorneys quickly veered into a discussion of whether a conviction for possession of the gun was possible, the communication from the jury was open to another reasonable interpretation. Willie argues that the jury was asking whether it could acquit him of murder if it believed he possessed the gun, and that the one-word answer of the trial judge resulted in an instruction to the jury to the effect that, “No, you cannot find he possessed the gun without also finding he is guilty of murder.” Such an instruction would clearly be contrary to the law, as possession of a gun does not amount to being guilty of deliberate design murder. It also would contradict the jury instruction that properly instructed the jury as to the elements of deliberate design murder. The jury heard Willie’s testimony, outlined above, that he came into possession of the gun after the murder. Perhaps the jury believed he possessed the murder weapon but hesitated to find he possessed it at the time of the murder, and the jury’s question was born of a tension between believing the former and doubting the latter. If so, the judge’s response may well have persuaded jurors to vote to convict based on their belief that Willie possessed the gun used in the crime.
¶26. The State, on the other hand, argues that the issue is barred by Willie’s failure to object at trial and otherwise lacks merit because Willie was not on trial for possessing the firearm. The State argues that any further response from the trial court would have confused the jury, as it indeed was not possible for the jury to convict Willie of possessing the gun. The State further contends that the jury instructions read as a whole properly instructed the jury.
¶ 27. As the case appears via the record on appeal, either interpretation of the intent behind the jury’s question—Willie’s or the State’s—is possible. Ironically, the trial court’s and the attorneys’ focus on the possibility that the jury wanted to consider a conviction for possession of a firearm and an acquittal for murder originated with Willie’s trial counsel, who spoke first after the trial judge read the question to the attorneys. Willie’s attorney suggested that possession of a firearm would be a lesser included offense, which in turn caused the trial court and prosecutor to discuss the absence of any such charge against Willie. After the discussion of the lesser-offense possibility ended, and the judge indicated he would respond with a simple, “No,” no one present discussed the possible effect, raised today, that the jury would take the judge’s response to indicate that a finding of possession of the firearm would necessitate a conviction for murder.
¶28. Because Willie’s counsel failed to object to the judge’s response, the issue is barred from review absent plain error. See Fitzpatrick v. State, 175 So.3d 515, 522 (¶ 31) (Miss. 2015) (“A defendant’s failure to object to a jury instruction at trial creates a procedural bar that prohibits appellate review of the issue, unless there is plain error.”); see also Holliman v. State, 178 So.3d 689, 700 (¶24) (Miss. 2015); Walker v. State, 729 So.2d 197, 202 (¶ 19) (Miss. 1998).
*1279 ¶ 29. We apply the plain-error rule only if “a defendant’s substantive or fundamental rights are affected.” Foster v. State, 148 So.3d 1012, 1018 (¶ 20) (Miss. 2014) (quoting Grayer v. State, 120 So.3d 964, 969 (Miss. 2013)). Applying the plain-error rule, the Court must determine: (1) whether the trial court deviated from a legal rule; (2) whether the error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial. Id. Only if the error “resulted in a manifest miscarriage of justice” will reversal occur. Foster, 148 So.3d at 1018 (¶20) (quoting Williams v. State, 134 So.3d 732, 736 (Miss. 2014)).
¶ 30. We have held that it is plain error to allow a jury instruction that permits the jury to find a defendant guilty for reasons other than- guilt as to every element of the underlying crime. Berry v. State, 728 So.2d 568, 571 (¶ 6) (Miss. 1999). In Berry, the defendant, Merlinda Berry, stood convicted of the transfer of cocaine. Id. at 569 (¶2). Among other issues on appeal, she contended that the instruction to the jury on the definition of accessory allowed the jury to return a guilty verdict even if it did not find her guilty of every element of the crime for which she was convicted. Id. at 571 (¶ 5). The instruction in question read as follows:
The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime, or immediately connected with it, or leading to its commission, is a principal.
One who aids, assists and encourages a transfer of cocaine is a principal and not an accessory, and his guilt in nowise depends upon the guilt or innocence, the conviction or acquittal of any other alleged participant in the crime. Therefore if you believe from the evidence, beyond a reasonable doubt, that Merlinda Berry did willfully, unlawfully and feloniously do any act which is an element of the crime of transfer of cocaine, as defined by the Court’s instructions, or immediately connected with it, or leading-to its commission, then and in that event, you should find Merlinda Berry guilty of transfer of cocaine[1] as charged in the indictment.
Id. at 570 (¶4). In Berry, the State—as does Presiding Justice Randolph in his separate opinion—responded that other instructions instructed the jury as to the elements of the crime. Id. at 571 (¶5).
¶31. The Berry Court acknowledged two other cases, Simmons v. State, 568 So.2d 1192 (Miss. 1990), and Hornburger v. State, 650 So.2d 510 (Miss. 1995), involving similar accessory instructions, in which the Court - affirmed the convictions because other instructions informed the jury of the requirement that it find the defendants guilty of each element of the crime. Berry, 728 So.2d at 571 (¶¶ 7—8). However; the Berry Court—again reviewing the issue for plain error—reached the opposite result and reversed Berry’s conviction.
In this case, however, we find that reading the instructions as a whole did not cure the error resulting from the improper instruction. The jury was in fact informed of the elements of transfer of cocaine and the State’s burden of proof in this case in instructions other than S-3. The problem with the offending instruction is that it appears to give the jury an additional option of finding the defendant guilty if shé committed only one element of the crime without even finding that the crime was ever completed. Even if the jury read all of the instructions together, they could still- be misled into believing that Instruction S-3 was merely another option in addition *1280 to the choice of finding that Berry committed all of the elements of the crime herself. We find that the instruction on an accessory in this case was confusing and misleading, and therefore requires reversal. Brazile v. State, 514 So.2d 325, 326 (Miss. 1987) (“inaccurate and confusing, nature” of instruction requires reversal and remand for a new trial)..
Berry, 728 So.2d at 571 (¶ 9).
¶ 32. Simmons v. State, 568 So.2d 1192 (Miss. 1990), included, inter alia,- an argument from the defendant that an aiding- and-abetting instruction given the jury implied that the jury could convict the defendant if the State proved only one element of the principal crime. Id. at 1204, The instruction at issue read as follows:
The- Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime and knowingly, wilfully and feloniously doing any act which is an element of the crime, or immediately connected with it, or leading to its commission, is as much a principal as if she had, with her own hand, committed the whole offense; and if you believe from the evidence, beyond a reasonable doubt, that the Defendant GAIL RENEE SIMMONS, did wilfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of Kidnapping or Aggravated Assault or Simple Assault, or immediately connected with any one of these crimes, or leading to its commission, then you shall . find the Defendant, GAIL RENEE SIMMONS, guilty of Kidnapping or Aggravated Assault or Simple Assault or any one or all of these crimes.
Id. at 1203-1204. The Simmons Court affirmed the ■ conviction and, in doing so, noted that other instructions informed the jury of the State’s burden to prove every element of the crime. Id.
If S3. In the later case Hornburger v. State, 650 So.2d 510 (Miss. 1995), the Court again affirmed a conviction despite an aiding-and-abetting instruction that “implied that the jury could convict her if only one element of the crime charged was proven.” Id. at 515. The instruction in Homburger read as follows:
The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately ' connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you find from the evidence beyond a reasonable doubt that the ■ defendant, Gregory Homburger, a/k/a Greg Homburger, did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of'burglary of a building, or leading to its commission, then and in that event, you-should find the defendant guilty as charged.
Id. at 514. Although, like the Simmons Court, the Homburger Court affirmed the conviction, unlike the Simmons Court, the Homburger Court held the trial court erred in giving the instruction at issue. Id. at 515. However, the Court, citing other jury instructions that required the jury to find the defendant guilty' of each element beyond a reasonable doubt, held the error had been harmless. Id.
¶ 34. In another, later case styled Liggins v. State, 726 So.2d 180 (Miss. 1998), the Court reversed a conviction because it agreed that the aiding-and-abetting instruction impermissibly lessened the burden on the State. In comparing the objectionable instruction in Liggins to that in Homburger, the court wrote:
*1281 Identifiable differences exist between the two instructions. In Homburger, the jury was charged that if the requirements of the instruction were met, it normatively “should” find the defendant guilty. In the instant case, the jury was charged that it “shall” find Liggins guilty. Further, Homburgef s instruction required consent to be deemed a principal and found guilt to derive from an act which is an element of or leads to the commission of . the crime. On the other hand, the instant case’s instruction did not require consent for principal status while it deemed guilt to stem from an act immediately connected with the crimes, as well as an act which is an element of or leads to the commission of those crimes.
Both instructions are objectionable in their effect. In Homburger, it was pointed out that “[instruction S—8] basically says if you find [the defendant] did any act which is an element of the crime of burglary, you shall find [the defendant] guilty as charged.” Hornburger, 650 So.2d at 514. As Liggins objected at trial, S-3 “lessens the burden of the State to prove every element of a crime by suggesting that if they can show any act which is an element of the crime, then the instruction directs them to find the defendant guilty.” Liggins basically argued that the State must simply show an act which is an element of the crime, rather than prove every element, to require a jury to find a defendant guilty. We found that the instruction in Hom-■burger was harmless error because of its sufficient sister instruction and because the term “should” was used'as opposed to the “shall” utilized in the instant case. Further, Homburgef s instruction required a greater burden on the state to prove the necessary elements, whereas the instant case’s instruction, lessened the state’s burden. Homburger is not this case. It is reversible error in this ease.
Liggins, 726 So.2d at 184-185 (¶¶ 15-17).
1135. Like Berry, Simmons, and Homburger, the trial court in the case sub judice instructed the jury on all of the elements of the crime. However, the instant case is more like Berry, and less like Simmons and Homburger, in that the trial judge’s instruction to the jury in response to the jury’s note gave the jury an “additional" option” of finding Willie guilty of murder if the jury also thought him “guilty” of possessing a gun. Again, the trial judge’s answer to the jury of “No,” combined with the jury’s question, effectively communicated to the jury that no, it could not find Willie “guilty” of having the gun without also finding him guilty of murder. Like the Berry Court before us, we hold the trial judge’s supplemental instruction to the jury, in response to the jury’s note, was “confusing and misleading, and therefore requires reversal.” Berry, 728 So.2d at 571 (¶ 9). As in Liggins, the judge’s instruction to the jury (in the form of his response to their question) in the case sub judice lessened the burden on the State.
¶36. In,short, the judge’s supplemental instruction in the case sub judice, like the troublesome instructions in Berry and Liggins, did not leave a hole in the understanding of the jury that could.be filled in by other instructions,.but actually contradicted the other instructions to the jury. It should not have been suggested to the jury that they must find Willie guilty of murder if they found him “guilty” of possessing the gun, because—at the least—such an instruction contradicted the correct instruction informing the jury it must find him guilty of the elements of deliberate design murder. ‘When a jury is given instructions which are in hopeless *1282 conflict this Court is compelled to reverse because it cannot be said that the jury verdict was founded on correct principles of law.” Scott v. State, 446 So.2d 580, 588 (Miss. 1984) (citing Pittman v. State, 297 So.2d 888 (Miss. 1974)); see also Stoop v. State, 531 So.2d 1215, 1219 (Miss. 1988) (holding that the court, not the jury, properly decides which instructions correctly portray the law).
¶ 37. We pause for a moment here to reiterate the suggestion of the Girton Court, that trial judges confronted with a note from the jury do what they can to be sure they understand what the jury truly intends to ask. Girton, 446 So.2d at 572-573. While the defense attorney’s immediate mention of gun possession as a lesser included offense appears to have distracted the judge and the prosecution from considering other possible meanings of the question, it is indeed another possible meaning of the question that leads to the uncertainty regarding the grounds for the jury’s verdict and the reversal of Willie’s conviction.
CONCLUSION
¶ 38. Willie failed to object to the testimony of the State’s ballistics expert and therefore is barréd from raising its admissibility on appeal. The failure to object was a strategic decision; accordingly, it does not rise to the level of ineffective assistance of counsel. Because Willie did not object to the ballistics evidence, he cannot contend that his conviction is against the overwhelming weight of the evidence because the ballistics evidence comprised much of the evidence against him. However, because the trial court’s supplemental instruction to the jury, given in response to the jury’s note, allowed the jury to find Willie guilty of murder if the jury found he possessed the gun used in the murder, we reverse his conviction and remand the case for further proceedings consistent with this opinion.
¶ 39. REVERSED AND REMANDED.
DICKINSON, P.J., AND LAMAR, J., CONCUR. KITCHENS, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. RANDOLPH, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., MAXWELL AND BEAM, JJ.

. A detailed description of firearm and tool-mark identification methodology is provided by United States v. Monteiro, 407 F.Supp.2d 351 (D. Mass. 2006). The pattern-matching methodology used by the experts in Monteiro, Taylor, and the other cases discussed is the same as that employed by Mclntire in all relevant respects.