# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00364-COA

MATTHEW EVANS A/K/A MATTHEW STANFORD EVANS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/31/2008 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER III |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | JOHN DAVID WEDDLE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/03/2023 |
| MOTION FOR REHEARING FILED: | |

### BEFORE BARNES, C.J., McCARTY AND SMITH, JJ.

### BARNES, C.J., FOR THE COURT:

¶1. In October 2008, a Monroe County Circuit Court jury convicted Matthew Evans of the statutory rape of his fiancée's sister Amy.[1] At the time of the rape, Evans was twenty-six years old, and Amy was fourteen years old. The trial court sentenced Evans to serve thirty years in the custody of the Mississippi Department of Corrections as a non-violent habitual offender.[2] Evans now appeals, claiming the trial court improperly gave the State's jury

---

[1] The victim has been given a pseudonym to protect her identity.

[2] Evans has been convicted of two prior sex crimes. In 1999, he pleaded guilty to the sexual battery of his brother's daughter and received a ten-year suspended sentence. In

instruction on attempted statutory rape, thereby constructively amending his indictment. Finding no error, we affirm.

## STATEMENT OF THE FACTS

¶2.     On the morning of January 5, 2007, Evans asked Amy to help move some items into a trailer in Monroe County, Mississippi. Evans was the fiancé of Amy's sister. Amy agreed; so she and Evans headed to the trailer alone after picking up a TV and some boxes.

¶3.     Upon arrival at the trailer, Amy moved things around to make room for the boxes. She walked into a bedroom and removed her sweatshirt because she was hot, leaving on her t-shirt. Evans followed her into the bedroom. He "put [her] on the bed and started kissing [her]." According to Amy, Evans held her down, removing her pants and underwear. He then digitally penetrated her vagina. Amy testified that she "was constantly telling him to stop." Evans did not stop but just told her "not to worry about it" because "nobody was going to find out." Next, Evans put his penis into her vagina. Amy testified that she was scared and in pain. They had sexual intercourse like that for "five to ten minutes." Amy was able to get one hand free and pushed him off of her. She got dressed and ran to the bathroom, where she discovered her vagina was bleeding. She then went outside to unload things from the car. She did not say anything to Evans, but Evans grabbed her and told her "if [she] told anybody, [she] kn[e]w what would happen." A few days later, Amy's parents found out about the rape and reported it to law enforcement.

¶4.     Law enforcement arranged a forensic interview for Amy in Tupelo, after which

2002, he pleaded guilty to fondling and received a twelve-year sentence, again suspended.

2

investigators obtained an arrest warrant for Evans and search warrants for his DNA and the trailer. Investigators from the Monroe County Sheriff's Office interviewed Evans, who at the time was being housed at the Lee County jail on unrelated charges. Before the interview, Evans requested that he be moved to the Monroe County jail because he had allegedly been assaulted, and his life had been threatened by other inmates. However, investigators observed no physical injuries on Evans, and he did not request medical treatment.

¶5.    During the interview, Evans waived his *Miranda*[3] rights and told investigators that the sexual encounter with Amy was consensual. The interview was not recorded, but Evans agreed to give a written statement, reiterating what he had said during the interview. He claimed that Amy "began coming on to him" first. Evans admitted to having sexual intercourse with Amy but stated he "didn't do it all the way." He "started to just insert it in a little bit and stopped." When Amy asked why he stopped, Evans said the main reasons were because of her sister and because she "was only about [fifteen] years old." During the interview, Evans asked whether Amy's consent would change the charges against him, and the investigator replied "no." Evans was then transferred to the Monroe County jail.

¶6.    On January 10, 2007, Amy was forensically examined by Kathy Kolar, a pediatric nurse practitioner at the University of Mississippi Medical Center who specialized in physically and sexually abused children. Kolar was an expert witness for the State. She testified that while trauma to the genitalia heals "very fast," especially in children, her findings "were suspicious of some kind of abuse." Kolar found two abnormalities to Amy's

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

genitalia. Specifically, she identified "two little blood spots" under the tissues, like a blood blister, and a "tiny tear" (one-quarter inch long) in the tissue beneath her hymen and vaginal opening. Kolar determined "some kind of blunt force trauma . . . push[ed] with enough force to cause . . . the little bleeding spots to rupture . . . [and] make that very small tear in the midline." Kolar's report, which was entered into evidence, concluded that "[s]exual abuse [was] suspected based on disclosure and physical findings."

¶7. At trial, Evans testified in his own defense. His account now differed from his signed statement to law enforcement—Evans denied that he and Amy ever had sexual intercourse or that he attempted to have sex with Amy. Now he claimed that Amy took off her sweatshirt in the trailer's bedroom and "proceeded to come on to [him]." Evans testified that he refused her advances, and they left the trailer. Evans claimed the only reason he spoke to investigators and signed a written statement confessing to the crime was because he wanted to be transferred to the Monroe County jail, as his life had been threatened at the Lee County jail.

**PROCEDURAL HISTORY**

¶8. The procedural history of this case is worth noting since Evans's direct appeal is occurring over twelve years after his conviction. Evans was indicted on one count of statutory rape by "hav[ing] sexual intercourse" with a fourteen-year-old child in violation of Mississippi Code Annotated section 97-3-65 (Rev. 2006). On October 30, 2008, Evans's two-day trial concluded with his conviction for statutory rape. Almost one year later, Evans's trial counsel filed an out-of-time motion for a new trial or judgment notwithstanding

4

the verdict, challenging the weight and sufficiency of the evidence. Evans also challenged a juror's possible bias, claiming he recently discovered one of the jurors knew Evans's family and was aware of Evans's prior convictions for similar sex crimes.

¶9. In June 2010, the trial court held a hearing on the motion, and its transcript is part of our record on appeal. The trial court found no evidence that Evans was prejudiced by the juror and denied his motion. Evans did not appeal from the order.

¶10. Over eight years later, in December 2018, Evans filed a pro se motion in the circuit court requesting permission to file an out-of-time appeal of his October 2008 conviction.[4] The trial court denied the motion, and Evans appealed the denial.[5] In March 2020, this Court affirmed the trial court's denial in *Evans v. State*, 299 So. 3d 913 (Miss. Ct. App. 2020).

¶11. In September 2020, Evans filed a motion for post-conviction collateral relief, again requesting permission to file an out-of-time appeal. Evans argued that his trial counsel was ineffective for failing to appeal his conviction or inform him of his right to appellate counsel. Also, he claimed that the trial court violated his right to due process by failing to inform him at sentencing of his right to appeal within thirty days. Evans argued that his

[4] Evans claimed after his trial in 2008, he told his trial counsel he wanted to appeal his conviction. Counsel allegedly told Evans that he would appeal after filing a post-trial motion, which was not filed until September 2009 (out-of-time). After the motion was denied, Evans claimed his counsel said he would request an out-of-time appeal, but he never did. Evans claims that he did not know his trial counsel had never appealed his conviction until recently.

[5] In March 2019, the Mississippi Supreme Court found the trial court's order was an appealable ruling and allowed Evans's motion to proceed as a motion for post-conviction collateral relief.

5

motion was excepted from the three-year statutory time bars under *Rowland v. State*, 42 So. 3d 503 (Miss. 2010), *overruled by Howell v. State*, 358 So. 3d 613 (Miss. 2023). After an evidentiary hearing, on April 5, 2022, the trial court[6] entered an order allowing Evans to file an out-of-time direct appeal. The State did not appeal from the order. On April 11, 2022, Evans directly appealed his 2008 conviction.

## ANALYSIS

¶12. Evans argues that the trial court improperly granted the State's jury instruction P-3 on "attempted statutory rape," claiming the instruction was confusing and unsupported by the evidence. Additionally, Evans claims that because the instruction allowed the jury to convict him on "attempted statutory rape" despite his not being indicted under the Code section for "attempted statutory rape," the instruction constructively amended his indictment. Thus, Evans contends that his conviction must be reversed.

¶13. Evans was indicted under the general Code section for statutory rape, section 97-3-65, as a non-violent habitual offender. At trial, the State offered jury instruction P-1, which tracked the elements of the statute found in section 97-3-65(1):

> The defendant, MATTHEW STANFORD EVANS, has been charged by indictment with [the] felony crime of statutory rape. If you find from the evidence in this case beyond a reasonable doubt that:
>
> (1) on or about January 5, 2007, did wilfully, unlawfully and feloniously have sexual intercourse with [Amy], a child under the age of sixteen (16) years of age, having a date of birth of March 14, 1992; and
>
> (2) who was thirty-six (36) or more months younger than the defendant;

---

[6] In 2022, the trial court judge was different from the trial court judge who denied Evans's pro se motion to proceed out of time in December 2018.

6

and

(3)      who was not the spouse of the defendant; and

(4)      the defendant was eighteen (18) years of age or older, having a date of birth of July 10, 1980,

then you shall find the defendant, guilty of statutory rape.

If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant, not guilty.

The State then offered jury instruction P-3, without objection from the defense, which tracked verbatim the language of section 97-3-65(5):

The Court instructs the Jury that in all cases where a victim is under the age of sixteen (16) years, it shall not be necessary to prove penetration where it is shown the genitals, anus or perineum of the child have been lacerated or torn in the attempt to have sexual intercourse with the child.

The trial court gave both instructions.

¶14.    Because his defense counsel did not object to jury instruction P-3, Evans now requests this Court to review the trial court's grant of instruction P-3 for plain error. *See Brown v. State*, 690 So. 2d 276, 297 (Miss. 1996) ("The defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal."). Applying the plain-error standard, this Court must determine "(1) whether the trial court deviated from a legal rule; (2) whether the error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial. Only if the error resulted in a manifest miscarriage of justice will reversal occur." *Collins v. State*, 305 So. 3d 1262, 1267 (¶19) (Miss. Ct. App. 2020) (quoting *Willie v. State*, 204 So. 3d 1268, 1279 (¶29) (Miss. 2016)). The plain-error standard is applied "only if a defendant's substantive or fundamental rights

7

are affected." *Id.*

¶15.    Evans argues that instruction P-3 improperly amended his indictment. Generally, "[a]n indictment may not be amended to change the nature of [the] charge, except by action of the grand jury which returned the indictment." *Griffin v. State*, 584 So. 2d 1274, 1275 (Miss. 1991) (citing *Akins v. State*, 493 So. 2d 1321, 1322 (Miss. 1986)). "To be permissible, the amendment . . . must be of form and not of substance." *Id.* "A constructive amendment of the indictment occurs when the proof and instructions broaden the grounds upon which the defendant may be found guilty of the offense charged so that the defendant may be convicted without proof of the elements alleged by the grand jury in its indictment." *Collins*, 305 So. 3d at 1266 (¶17) (quoting *Bell v. State*, 725 So. 2d 836, 855 (¶58) (Miss. 1998)). However, "not all variances between the indictment and instructions constitute a constructive amendment, nor do they rise to plain error." *Id.* (quoting *Bell*, 725 So. 2d at 855 (¶61)). "[A] variance is not 'plain error' if it does not prejudice the defendant's defense at trial or deny his right to a fair trial." *Id.* at 1267 (¶20).

¶16.    Evans claims that "[b]ecause there was no order amending the indictment," the variance between his indictment and jury instruction P-3 constructively amended his indictment. Evans contends that jury instruction P-3 allowed the jury to convict Evans under a separate subsection of the statutory rape statute than his indictment covered, thereby lowering the State's burden of proof. We disagree.

¶17.    Here, the trial court did not commit plain error by giving instruction P-3 because it was a proper instruction and did not constructively amend the indictment. There is no

separate crime of "attempted statutory rape" as Evans argues. Subsection 97-3-65(5), the basis of jury instruction P-3, is not a separate crime for "attempted statutory rape" or a broader ground for conviction; instead, it differentiates the proof required for sexual penetration for victims under the age of sixteen: if certain genital-area injuries occur in an attempt to have sexual intercourse with a child, actual penetration is not required to be proved. Evans received one element instruction (P-1) on statutory rape; he did not receive an element instruction on "attempted" statutory rape. Jury instruction P-1 tracked the language of Evans's indictment and section 97-3-65(1).[7]

¶18. Evans further argues that instructing the jury on section 97-3-65(5) was "confusing" to the jury and unsupported by the facts even though he admits that jury instruction P-3 was "an accurate statement of law" as it tracked the language of subsection (5) exactly. Evans claims that his defense was that there was no sexual intercourse with Amy, not that there was no penetration. Regardless of Evans's defense, subsection (5) was well supported by the evidence. The State's expert, Kolar, testified that there was a one-quarter-inch tear in the tissue beneath Amy's vagina and two blood spots underneath the tissue. Because Amy was under sixteen years old, jury instruction P-3 properly provided that sexual penetration need not be proven. Had the jury believed Evans's testimony at trial (that no sexual contact occurred), he would not have been convicted. Instruction P-3 regarding genital-area injury could not have resulted in confusion.

## CONCLUSION

---

[7] Evans's indictment did not specify a particular subsection, and subsection (1) lists the elements for statutory rape.

¶19.    In conclusion, jury instruction P-3 did not constructively amend Evans's indictment.

The instruction was a correct statement of the law, was not confusing, and was supported

by the evidence.  The trial court did not plainly err in giving the instruction.

¶20.    **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.  WESTBROOKS, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**