# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01502-COA

**SHANNON CRAIG PARKER A/K/A SHANNON C. PARKER A/K/A SHANNON PARKER**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/27/2016 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/03/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     Following a jury trial, Shannon Craig Parker was convicted of aggravated assault. The circuit court sentenced him to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC) with an additional consecutive sentence of five years for using a firearm during the commission of the crime.  On appeal, Parker argues that the trial judge erred by allowing an expert in firearms and toolmark identification to testify and by refusing to order a mental evaluation to address his sanity at the time of the offense.  The former issue is procedurally barred because Parker did not object to the expert's testimony

at trial, and the latter issue is without merit.  Parker also argues that his additional five-year sentence for use of a firearm violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.  However, prior decisions of our Supreme Court and this Court have rejected the same argument.  Therefore, we affirm the conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     Around 7:40 p.m. on January 28, 2016, Eric and Edna Burkett were in front of their home in Hattiesburg, about to take their dog for a walk, when a white pickup truck stopped in the street in front of their home.  The Burketts did not know the driver, a large white man wearing an orange shirt, and asked if they could help him. The driver got out of the truck, mumbled a few words, opened the truck's back door, took out a rifle, and shot Eric in the stomach.  The man also shot at Edna, but he missed.  The Burketts ran, and their neighbor called an ambulance and the police.

¶3.     A few minutes later and less than half a mile from the Burketts' home, police found a white truck in a ditch with its tires spinning, as if the driver was attempting to drive out of the ditch.  Parker, a large white man, was driving the truck, and he was wearing an orange shirt.  After the police placed Parker under arrest, they found a rifle in the truck.  The Burketts later identified Parker in photo lineups and at trial as the man who shot Eric.  Police also recovered one shell casing in the street in front of the Burketts' home.

¶4.     Parker was uncooperative and "appeared to be under the influence" when he was taken into custody, so the police did not attempt to interview him on the night of his arrest.

2

The next day, Parker waived his *Miranda* rights and wrote and signed the following statement: "I don't no [sic] victim. Don't even no [sic] victim. All I remember is sitting spinning." Parker cried during his interview, and the officer who interviewed him recommended a mental evaluation. Parker saw a licensed professional counselor and reported that he was being treated for anxiety and depression. The counselor noted that Parker "was verbal and responsive" and that "[h]is thought processes were rational."

¶5. Parker was indicted on two counts of aggravated assault, Count I for shooting Eric and Count II for attempting to shoot Edna, with a five-year sentence enhancement for using a firearm during the commission of the crime. *See* Miss. Code Ann. § 97-37-37(1) (Rev. 2014). His case proceeded to a jury trial in circuit court on September 22–23, 2016. The State elected to proceed as to Count I only.

¶6. The shell casing found in front of the Burketts' home and the rifle found in Parker's truck were sent to the Mississippi Crime Laboratory for analysis. At trial, the State tendered Carl Fullilove as an expert in the field of firearms and toolmark identification, and Parker's attorney specifically stated that he had "[n]o objection" to Fullilove's testimony.

¶7. Fullilove testified that he has a master's degree in forensic sciences, has attended FBI courses in firearm identification techniques, and has twenty years of experience analyzing firearms and components, including ten years at the Mississippi Crime Lab. Fullilove testified that he test-fired the rifle found in Parker's truck in a laboratory and then used a microscope to examine the shell casing from the test-fire for "individual characteristics" that

3

are unique to a specific firearm. He then compared the individual characteristics of the shell casing from the test-fire to those of the shell casing found in front of the Burketts' home. Fullilove testified that, in his expert opinion, the shell casing found in front of the Burketts' home was fired from the rifle found in Parker's truck. He also testified that an independent examiner (a "technical reviewer") at the Mississippi Crime Lab reviewed the same evidence and reached the same conclusion.

¶8. On cross-examination, Fullilove was asked about a 2008 National Academy of Sciences (NAS) report on firearm and toolmark identification and a subsequent response to the report issued by the Association of Firearm and Tool Mark Examiners (AFTE). Fullilove testified that AFTE, of which he is a member, had adopted a standard that an expert's testimony regarding a match should not be stated in "absolute" terms but rather should be stated in terms of "a reasonable degree of scientific certainty." Fullilove also conceded that AFTE had estimated that firearm and toolmark analysis could produce a "false positive rate" of approximately 1.3 percent.

¶9. Parker exercised his right not to testify at trial and did not call any witnesses in his defense, and the jury found him guilty of aggravated assault. The circuit court sentenced Parker to serve twenty years in MDOC custody with an additional consecutive sentence of five years for using a firearm during the commission of the crime. Parker subsequently filed a motion for a judgment notwithstanding the verdict or a new trial, which the circuit court denied, and a timely notice of appeal.

¶10.    On appeal, Parker argues that the trial judge erred by allowing Fullilove to testify and by not ordering a mental evaluation to assess his mental status at the time of the offense. Parker also argues that the sentence enhancement for use of a firearm in the commission of the offense violates double jeopardy. We address these issues in turn, providing additional facts and procedural history as needed.

## I.    Expert Testimony

¶11.    Parker first argues that the trial court erred in allowing Fullilove to testify because his testimony was "unreliable." However, Parker waived this issue because his trial counsel specifically stated that he had "[n]o objection" to Fullilove's testimony. Our Supreme Court recently addressed an essentially identical issue in *Willie v. State*, 204 So. 3d 1268, 1272-75 (¶¶7-19) (Miss. 2016). We hold that Parker's claim is without merit given the Supreme Court's decision in *Willie*.

¶12.    In *Willie*, an examiner from the Mississippi Crime Lab gave similar expert testimony that shell casings and bullets found at the crime scene were fired by a gun owned by the defendant (Willie). *See id.* at 1272-73 (¶¶7-8). Willie did not object to the examiner's testimony, and on cross-examination, counsel only asked whether there was "a margin of error for his results." *Id.* at 1273 (¶9). The expert responded that he was not aware of the "margin of error but admitted that he [was] not infallible." *Id.* On appeal, Willie argued that the "testimony matching the bullets and shell casings to the gun associated with Willie was

5

unreliable because the science of forensic firearm and toolmark identification does not permit identifications to be made with absolute certainty." *Id.* at 1274 (¶13). However, the Supreme Court held that the issue was "procedurally barred" because Willie failed to object to the expert's testimony at trial. *Id.*[1]

¶13. In this case, Parker filed a pretrial motion to exclude Fullilove's testimony. The motion argued that Fullilove's testimony was unreliable and attached the 2008 NAS report that, as discussed above, was later a subject of cross-examination at trial. The State argued that the motion was untimely, but the trial judge stated that he would rule on the motion during trial after giving Parker an opportunity to voir dire Fullilove. During trial, Parker's attorney questioned Fullilove outside the presence of the jury; however, counsel then specifically stated that he had "[n]o objection" to Fullilove's testimony. Parker's attorney then utilized the NAS report on cross-examination, and Fullilove agreed that AFTE had responded with a statement that examiners should not testify in "absolute" terms but rather

---

[1] We cite to the lead opinion in *Willie*, which reversed the conviction on other grounds. *See Willie*, 204 So. 3d at 1276-82 (¶¶22-37). The lead opinion was joined in full by only three justices. However, four additional justices joined a separate partial concurrence/partial dissent that would have affirmed the conviction. *See id.* at 1290-94 (¶¶71-81) (Randolph, P.J., concurring in part and dissenting in part). Those four justices did not express any disagreement with the lead opinion's holding that Willie's objection to the firearm and toolmark testimony was procedurally barred. Finally, a third opinion, joined by two justices, implicitly agreed that the issue was procedurally barred but argued that the failure to object to the testimony constituted ineffective assistance of counsel. *See id.* at 1282-90 (¶¶40-70) (Kitchens, J., concurring in part and in result). Thus, there was no dissent as to the lead opinion's holding that the issue was procedurally barred. We address the issue of ineffective assistance briefly below.

6

should testify to "a reasonable degree of scientific certainty." Fullilove also acknowledged that AFTE had stated that toolmark analysis could produce a 1.3 percent "false positive" rate, which defense counsel later emphasized in closing argument.

¶14.    In this case, as in *Willie*, Parker's appellate counsel argues that Fullilove's testimony should have been excluded as unreliable and because "Fullilove failed to qualify his opinion as being to a reasonable degree of certainty." However, on cross-examination, Fullilove did concede that AFTE had issued a statement adopting a "reasonable degree of scientific certainty" as the appropriate standard for testimony. Fullilove also conceded that AFTE had acknowledged an error rate and the possibility of false positives. More important, just as in *Willie*, Parker failed to object to Fullilove's testimony at trial. Therefore, as in *Willie*, this issue is procedurally barred. *Willie*, 204 So. 3d at 1274 (¶13).[2]

¶15.    Parker also makes a cursory alternative argument that his trial counsel rendered ineffective assistance by failing to object to Fullilove's testimony. Again, however, *Willie* rejected an essentially identical argument. *Id.* at 1274-75 (¶¶14-19); *see supra* n.1. The *Willie* Court held that trial counsel's handling of the issue and decision not to object to the expert's testimony fell "within the scope of trial strategy and did not constitute defective representation." *Willie*, 204 So. 3d at 1275 (¶19). In this case, Parker's trial counsel made use of the 2008 NAS report and AFTE's response on cross-examination and appears to have

_____

[2] Parker's appellate brief also relies on a 2016 report of the President's Council of Advisors on Science and Technology. This report is not in the record and appears to have been released only two days before Parker's trial began.

7

conducted a more thorough and effective cross-examination of the expert than did trial counsel in *Willie*. Therefore, pursuant to the Supreme Court's decision in *Willie*, trial counsel's decisions fall within the ambit of trial strategy and do not rise to the level of ineffective assistance of counsel. *Id.*; *see State ex rel. Moore v. Molpus*, 578 So. 2d 624, 634 (Miss. 1991) ("[L]ike cases ought to be decided alike.").

## II.     Motion for a Mental Evaluation

¶16.    Prior to trial, Parker filed several pro se motions and then indicated that he desired to plead guilty to one charge of aggravated assault. However, at his plea hearing, Parker stated that he had no recollection of the shooting and did not know whether he had committed the crime, and the judge therefore refused to accept his plea. Parker then filed a pro se motion for a mental examination. Parker's motion asserted that at the time of the offense he "was in no right state of mind" and was not "able to know right from wrong." He requested an examination and an expert to testify in support of "his insanity defense." Parker's motion noted that arresting officers had described him as "belligerent" and thought that he "appeared to be under the influence of some type of drug or alcohol." The motion also noted that the Burketts told police that he was behaving strangely and mumbling incoherently before he shot Eric. Finally, Parker's motion stated that he had been treated for depression and anxiety and had been prescribed Wellbutrin, Viibryd, and Xanax.

¶17.    Parker's court-appointed attorney informed the court that she had advised Parker that she could not file a motion for a mental evaluation in good faith because she did not believe

that he could satisfy the standard for an insanity defense, i.e., "the *M'Naghten* test."[3]  The

court then allowed Parker to present his motion and to offer any additional information that

might warrant a mental evaluation.[4]  Parker told the court that he was competent for purposes

of trial but could not remember committing the crime.  He also reiterated that he had

prescriptions for depression and anxiety.  Parker also told the court that he had been

hospitalized in Alabama in 2013 after a suicide attempt.

¶18.    The court heard Parker's argument and questioned him thoroughly about his mental

health and the basis of the motion.  The trial judge then found as follows:

> [I]n terms of the treatment for anxiety and depression and the unfortunate
> event with attempting to commit suicide one time, there's nothing in anything,
> that information or the demeanor I've seen, the motions that have been filed,
> the court file itself, my interactions with Mr. Parker to lead me to believe that
> there's any rational basis for appointing a psychiatrist or psychologist to
> examine him for the purpose of determining either his competency or sanity.

Accordingly, the court denied Parker's motion.

¶19.    On appeal, Parker argues that the trial judge committed an abuse of discretion by

denying his motion for a mental examination.  Parker relies on *Ake v. Oklahoma*, 470 U.S.

---

[3] "Mississippi follows the *M'Naghten* test for determining whether a person was sane at the time of the crime.  Under the *M'Naghten* test, the accused must be laboring under such defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing or (2) if he did know it, that he did not know that what he was doing was wrong.  In sum, the accused must not have known right from wrong at the time of the offense." *Hearn v. State*, 3 So. 3d 722, 738 (¶46) (Miss. 2008) (citations and quotation marks omitted).

[4] The court allowed Parker to file and present the motion although it was beyond the deadline for filing notice of an insanity defense and pretrial motions.

68 (1985), and other cases holding that an indigent defendant has a due process right to expert assistance in some cases; former Uniform Rule of Circuit and County Court Practice 9.06, which was in effect at the time of trial; and current Rule of Criminal Procedure 12.3, which went into effect after trial. Regardless of how the issue is framed, we review the trial judge's ruling for an abuse of discretion. *See, e.g.*, *Harden v. State*, 59 So. 3d 594, 603 (¶19) (Miss. 2011); *Barnett v. State*, 192 So. 3d 1033, 1038 (¶17) (Miss. Ct. App. 2015), *cert. denied*, 202 So. 3d 1267 (Miss. 2016). For the reasons that follow, we find no abuse of discretion in the trial judge's ruling.

¶20. Former Uniform Rule 9.06 does not apply to Parker's claim because that rule addressed the defendant's competence to stand trial and required a mental evaluation and a hearing if the court had "reasonable ground to believe that the defendant [was] incompetent to stand trial." There is no dispute that Parker was competent to stand trial. His only argument is that he should have been given an evaluation and expert witness to support an insanity defense. Accordingly, former Rule 9.06 does not apply.

¶21. Nor does Rule of Criminal Procedure 12.3 apply in this case. This new rule does permit a court to direct a psychiatrist or psychologist to address the defendant's sanity at the time of the offense in cases in which the court has ordered a mental evaluation; however, the rule does not require the court to do so, and, more important, it was not in effect at the time of Parker's trial. Therefore, we focus on whether Parker was entitled to a mental evaluation and expert assistance as a matter of due process.

¶22. A trial judge abuses his discretion in denying an indigent defendant's request for expert assistance only "when denial of such assistance would render the trial fundamentally unfair." *Barnett*, 192 So. 3d at 1038 (¶17) (quoting *Barksdale v. State*, 176 So. 3d 108, 112 (¶18) (Miss. Ct. App. 2015)). "Concrete reasons for requiring an expert must be provided by the accused." *Green v. State*, 631 So. 2d 167, 171 (Miss. 1994). A trial judge is not required to provide expert assistance based solely on the defendant's own "unsubstantiated assertions." *Brown v. State*, 152 So. 3d 1146, 1166 (¶90) (Miss. 2014) (quoting *Harrison v. State*, 635 So. 2d 894, 901 (Miss. 1994)).

¶23. In the present case, we cannot say that the trial judge abused his discretion by denying Parker's motion for a mental evaluation. Even after Parker's attorney informed the court that she could not present such a motion in good faith, the trial judge afforded Parker an opportunity to put forward any evidence that would warrant a mental evaluation. And even after Parker offered little evidence to support his motion, the trial judge continued to question him in an apparent effort to explore any possible evidentiary basis for the motion.

¶24. Neither Parker's arguments nor the judge's questions identified any concrete reason that a mental evaluation was necessary. Parker's treatment for depression and anxiety has no apparent relevance to his ability to know right from wrong at the time of the offense. The same can be said of Parker's representation that he attempted suicide over two years before the offense. The remaining evidence consists of Parker's own assertions that he does not remember shooting Eric and evidence that he behaved strangely or as if he might have been

11

under the influence of drugs or alcohol around the time of the offense. Such evidence failed to meet Parker's burden of establishing "concrete reasons" that expert assistance was necessary or that he had a viable insanity defense. *Brown*, 152 So. 3d at 1166 (¶90) (quoting *Harrison*, 635 So. 2d at 901). Therefore, the trial judge did not abuse his discretion by denying the motion.

¶25. Finally, we disagree with the dissent's assertion that it "is clear from the record" that the trial judge "was focused on Parker's ability to stand trial rather than his sanity at the time of the incident." *Post* at ¶38. The record shows otherwise. After Parker made clear that his motion concerned his mental state at the time of the offense, the judge invited Parker to offer any additional relevant medical records or witnesses. The judge even told Parker that he would reconvene the hearing the following day if necessary. After Parker rested, the judge found, as quoted above, that there was no "rational basis for appointing a psychiatrist or psychologist to examine him for the purpose of determining either his competency *or sanity*" (emphasis added). The trial judge understood that competency to stand trial and sanity at the time of the offense are distinct concepts.[5] And, again, we cannot say that the trial judge abused his discretion by denying Parker's motion.

### III. Firearm Enhancement

---

[5] The trial judge carefully considered the issue of Parker's competence to stand trial as well. This was appropriate and understandable in light of a series of decisions by our Supreme Court and this Court reversing convictions on that issue. *See, e.g.*, *Sanders v. State*, 9 So. 3d 1132 (Miss. 2009); *Brasso v. State*, 195 So. 3d 856 (Miss. Ct. App. 2016).

12

¶26. Parker received an additional consecutive sentence of five years' imprisonment pursuant to Mississippi Code Annotated section 97-37-37(1) (Rev. 2014).[6] On appeal, he argues that this sentence enhancement violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Specifically, Parker contends that the enhancement subjects him to "multiple punishments for the same offense" because his conviction and sentence for aggravated assault also punish his use of the same firearm. He acknowledges that he did not raise this issue in the trial court, but he argues that his enhanced sentence amounts to "plain error."

¶27. However, this Court has repeatedly held that the firearm enhancement does not violate the Double Jeopardy Clause. We have held that by enacting the firearm enhancement, the Legislature intended to authorize cumulative punishments, and this does not violate double jeopardy. *Rosebur v. State*, 214 So. 3d 307, 310-11 (¶15) (Miss. Ct. App. 2017) (collecting cases). Moreover, as we noted in *Rosebur*, our Supreme Court has adopted this Court's reasoning. *Id.* at 311 (¶16). In *Taylor v. State*, 137 So. 3d 283 (Miss. 2014), the Supreme Court held: "The Legislature intended for these two punishments to apply to the same offense, therefore there is no double-jeopardy concern." *Id.* at 288 (¶17) (affirming twenty-year sentence for aggravated assault with a consecutive five-year "firearm enhancement").

_____

[6] "Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended." Miss. Code Ann. § 97-37-37(1).

Accordingly, Parker's double jeopardy claim is without merit.

## CONCLUSION

¶28.    Parker's claim that the trial judge abused his discretion by admitting unreliable expert testimony is procedurally barred because Parker did not object to the testimony at trial.  In addition, Parker's trial attorney did not render ineffective assistance by not objecting to the expert testimony.  These issues are controlled by the Supreme Court's opinion in *Willie*, *supra*.  Parker's claim that the trial judge abused his discretion by denying his motion for a mental evaluation is also without merit.  Finally, Parker's five-year sentence enhancement for using a firearm does not violate double jeopardy.

¶29.    **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES AND FAIR, JJ., CONCUR.  GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.  TINDELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., CARLTON, GREENLEE AND WESTBROOKS, JJ.**

**TINDELL, J., DISSENTING:**

¶30.    I respectfully disagree with the plurality opinion on one issue—the trial court's denial of Parker's request for a mental evaluation regarding an insanity defense.  Because I find the trial court abused its discretion in denying Parker's request for a mental evaluation, I would reverse the trial court's judgment and remand this case for a new trial.

## I.    Parker's Condition on the Night of the Incident

¶31.    The Burketts did not know Parker, and Parker did not know the Burketts.  When the

14

Burketts saw Parker in front of their house, he was acting a "little strange." As they approached him to see if he needed assistance, he started talking "in a strange language" and "mumbling" incoherently. For some unknown reason, Parker retrieved a .22-caliber rifle from his truck and fired three shots at the Burketts, one of which struck Eric in the stomach.

¶32.    Approximately fifteen minutes later, law enforcement found Parker less than one-half mile from the Burketts' house. He was sitting in his vehicle, which was stuck in a ditch with the tires spinning. Parker did not flee when officers approached his vehicle. Officer Erick Mitcham testified that after being ordered to exit his vehicle, Parker got out and "stood there and stared at [him]" and that Parker was having difficulty standing straight. Officer Mitcham testified that Parker "was kind of wobbly," ultimately falling to the ground. Parker was then placed in handcuffs and transported to the police station.

¶33.    At the station that night, Detective Tamara Moore did not get a statement from Parker. Detective Moore admitted that one of the reasons she did not interview Parker was because she did not believe his statement could have been voluntarily or knowingly made at that time.[7] The following day Detective Moore obtained a handwritten statement from Parker that simply read: "I don't know victim. Don't even now. All I remember is sitting and spinning." After meeting with Parker, Detective Moore recommended that Parker be

_____

[7] Detective Moore thought Parker might be under the influence of something, but no evidence was retrieved from the vehicle or the scene to support this theory, and Parker's blood was not tested for alcohol or drug use.

15

evaluated by mental-health personnel.[8]

## II.     Parker's Pro Se Motion for a Mental Evaluation

¶34.    Although Parker had a court-appointed attorney, he pursued his motion for a mental evaluation pro se.  Parker's attorney stated to the court the following:

> Your Honor, this is where Mr. Parker and I disagree on the strategies of this trial.  He wishes to make a motion for his own mental evaluation and wishes that I would offer his treating nurse practitioner and his doctor, and I have tried to explain to him the parameters that the law requires in order to request a mental evaluation and that he does not fall within those parameters, and so I have advised him that I don't intend to file that, and I don't believe he's going to meet those conditions, and he wants to be heard on that.  He's just told me now that he would like to make his own motion.

Parker returned to his jail cell, and then he drafted and prepared his motion for a mental examination by 5 p.m. the following evening.  A few days later, Parker argued his own motion to the court.

¶35.    At the hearing, Parker attempted to introduce evidence supporting his motion for a mental examination, some of which included hearsay statements from the victims, officers, and medical providers.  But when Parker attempted to present such evidence, the Court advised him, "[W]hat you've done, Mr. Parker, is you cited a bunch of people and what they allegedly said, but they're not in the courtroom, and that's hearsay. . . , and I don't see that

---

[8] The brief evaluation occurred the day after the incident.  The report stated that Parker had been treated for years for depression and anxiety and that his current medications were Wellbutrin, Viibryd, and Xanax.  The report did not address Parker's mental state on the night of the incident, and there is no indication that the evaluation was performed to assess his competency to stand trial.

there's an exception to the rule against hearsay." The trial judge had previously advised Parker that once he filed his motion, the judge would "require the State to bring who [he thought] might be . . . helpful to the process" and that "it may be necessary for one or more individuals at the jail to be called." However, at the hearing, no such witnesses were made available.

¶36. With no other witnesses there on his behalf, Parker advised the court that he could not remember the events on the evening of the assault and that he did not know if he had been under the influence of alcohol or drugs at the time. Parker testified to a history of mental-illness-related hospitalizations, the names or locations of medical facilities where he received treatment, a prior suicide attempt, and taking a number of medications over the years for anxiety, depression, psychosis, and mental illness. Parker also testified that, at the time he assaulted the Burketts, he was under a doctor's care and on medication for anxiety and depression. In addition, Parker testified to receiving Social Security disability benefits for physical and mental issues.

### III.    The Court's Ruling on the Motion for Mental Evaluation

¶37. Apparently focusing on Parker's competency to stand trial rather than his competency at the time of the assault, the trial court denied Parker's motion for a mental evaluation. In reaching its conclusion, the trial court made the following observations:

> [S]pecifically[,] the [c]ourt finds that Mr. Parker appears to have sufficient present mental . . . ability to confer with his attorneys with a reasonable degree of rational understanding of the nature and object of the proceeding against him; that the [c]ourt believes that the defendant is currently able to assist his

17

defense in preparing a defense on the current charge. Therefore, I find that Mr. Parker is competent to stand trial at this time, and the trial will go forward on Thursday, as planned.

## ANALYSIS

¶38. What is clear from the record is that the trial court was focused on Parker's ability to stand trial rather than his sanity at the time of the incident. These are two distinct concepts. On the concept of insanity as a defense, Mississippi uses the *M'Naghten*[9] test "to define those instances where a defendant may escape punishment based on his mental incapacity" at the time of the alleged criminal act. *McLaughlin v. State*, 789 So. 2d 113, 115 (¶7) (Miss. Ct. App. 2001). This is the concept upon which I take issue with the plurality opinion. Under the *M'Naghten* criteria, a defendant must show that because of his mental incapacity, he was "either (a) unable to understand the difference between right and wrong, or (b) was unable to appreciate and comprehend the consequences of his actions." *Id*. at 115 (¶8).

¶39. In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the United States Supreme Court provided the framework for analysis of the states' obligations to ensure indigent criminal defendants, like Parker, are afforded a fair opportunity to present their defense. Under that framework, the Fourteenth Amendment's due-process guarantees apply to ensure indigent defendants have access to the "raw materials integral to the building of an effective defense." *Id*. at 77. A plain review of the *Ake* factors reveals the Fourteenth Amendment's due-process guarantees call for the provision of, at a minimum, a mental evaluation focused on Parker's

---

[9] *See M'Naghten's Case*, 10 Cl. & Fin. 200, 8 Eng. Rep. 718 (1843).

probability of success with an insanity defense.

¶40.    I am not suggesting that a mental evaluation must necessarily be granted to every defendant who requests one in every criminal proceeding. However, we should not "hesitate to reverse a trial court's denial of expert assistance to an indigent defendant when the lack of expert assistance denied the defendant due process such that the trial was rendered fundamentally unfair." *Lowe v. State*, 127 So. 3d 178, 181 (¶14) (Miss. 2013) (citing *Fisher v. City of Eupora*, 587 So. 2d 878, 883 (Miss. 1991)). Once a defendant like Parker shows that his sanity on the date of the alleged crime was questionable and that his insanity may provide him a defense, the need for a mental examination and psychiatric or related testimony is readily apparent. *Ake*, 470 U.S. at 83.

¶41.    Without an expert or mental evaluation, a defendant is left without the "raw materials integral to the building of an effective defense." *Barnett v. State*, 192 So. 3d 1033, 1038-39 (¶17) (Miss. Ct. App. 2015) (quoting *Ake*, 470 U.S. at 77). In *Billiot v. State*, 454 So. 2d 445, 463 (Miss. 1984), the Supreme Court held that once there is reasonable doubt as to a defendant's sanity, it is the State's burden to prove sanity beyond a reasonable doubt. With some exceptions, defendants not pleading guilty may make any defense they have. *Stewart v. State*, 790 So. 2d 838, 840 (¶6) (Miss. Ct. App. 2000) (citing *McLeod v. State*, 317 So. 2d 389, 391 (Miss. 1975)). The Supreme Court has further instructed that:

> When the defense is insanity, either general or partial, the door is thrown wide open for the admission of evidence of every act in the accused's life relevant to the issue of insanity and is admissible in evidence. The trial court is to be liberal in allowing the introduction of evidence or examination of witnesses

19

which tends to show the insanity or sanity of the accused.

*Id*. Here, Parker was wholly deprived from receiving a mental evaluation and presenting evidence to support a defense of insanity.

¶42. It is my opinion that Parker met his initial burden and created reasonable doubt as to his sanity at the time of the assault on the Burketts. In denying his motion, the trial court denied him "assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense . . . [and the right] to present testimony." *Ake*, 470 U.S. at 82. Therefore, I would reverse the trial court's judgment and remand this case for a new trial.

**IRVING, P.J., CARLTON, GREENLEE AND WESTBROOKS, JJ., JOIN THIS OPINION.**