# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01416-COA

**JAMES DOUGLAS WILLIE, SR. A/K/A JAMES**                    **APPELLANT**
**DOUGLAS WILLIE A/K/A SOUTH MEMPHIS**

**v.**

**STATE OF MISSISSIPPI**                                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2016 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 11/06/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     James Willie Sr. was convicted of murder, possession of a firearm by a felon, and possession of a stolen firearm. For the murder conviction, the Tunica County Circuit Court sentenced him to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). He was sentenced to ten years for possession of a firearm by a felon, with the sentence to run consecutively to his life sentence. For possession of a stolen firearm, the court sentenced Willie to five years, which was to run consecutively to the other sentences.

¶2. Willie filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial, alleging that the court erred in "allowing the State['s] witness Bryon McIntire to be qualified and testify as an expert witness in the area of firearms and toolmark identification." The court denied his motion. On appeal, Willie renews his claim concerning McIntire's expert testimony. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3. On May 11, 2012, Lori Ann Carswell was found dead near her car on Highway 713 in Tunica County. The cause of death was a distant gunshot wound to the head. Law enforcement recovered a shell casing a few feet from her vehicle. On May 15, the Tunica County Sheriff's Department received information linking Willie to Carswell's murder. It obtained a search warrant for Willie's apartment and a maroon Equinox SUV belonging to Willie's girlfriend, Latoya Lewis. A 9-millimeter handgun was found in the SUV's glove compartment, and a loaded magazine with nine rounds was located above the sun visor. It was later determined that the gun was stolen a month previously from a home in Coahoma County. The gun was sent to the Mississippi Crime Laboratory for ballistics testing.

¶4. Law enforcement officers interviewed Willie on May 15. He told them he had bought the gun in Memphis on May 9 for protection and had taken it to Arkansas with him. His girlfriend, Lewis, initially told the sheriff's department that she, Willie, and their children had been in Arkansas that weekend and were in Memphis at the time of the murder. Several hours later, she changed her story, saying they had returned to Tunica from Arkansas late on

2

May 10. She had been asleep in the SUV but awoke to see Willie flagging down a vehicle. The woman driving the car pulled over, and Willie pulled a gun on the woman. Lewis then heard a "pow." When Willie returned to the SUV, he told her not to say anything or he would kill her.

¶5. On August 13, 2012, a Tunica County grand jury indicted Willie of Count I, deliberate-design murder; Count II, possession of a firearm by a felon; Count III, aggravated assault; Count IV, kidnapping; Count V, rape; and Count VI, possession of a stolen firearm. Willie moved to sever Counts III-V as those counts involved a separate set of circumstances, and the trial court granted the motion. A jury trial was held September 6-8, 2016, on Counts I, II, and VI.[1] The State offered McIntire "as an expert in the field of toolmarking and firearm examination." Although defense counsel objected to his testimony, claiming it failed to meet the *Daubert* standard,[2] the trial court ruled that McIntire was qualified as an expert in firearm and toolmark identification and allowed his testimony.[3] McIntire testified that based on a "reasonable degree of scientific certainty," the shell casing found at the murder scene was fired from the 9-millimeter found in Lewis's SUV.

---

[1] A jury trial on Counts I, II, and VI was previously held on March 31, 2014, but it resulted in a mistrial when Willie became belligerent and had to be detained by law enforcement in front of the jury. The trial court subsequently granted Willie's motion to change venue to Bolivar County.

[2] *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).

[3] We note that although the trial court granted Willie's motion for funds to hire his own firearm and toolmark expert, no expert witness testified for the defense.

¶6. Lewis testified, reiterating that she had seen Willie flag down a car, get out of the car to speak to a woman, and she heard a "pow." On cross-examination, Lewis admitted that she gave inconsistent statements, but she said Willie had asked her to lie for him. Although he had originally told investigators he bought the gun on May 9, Willie testified at trial that he bought the gun "off the streets" in Memphis on May 13. Willie admitted that he had a prior conviction for house burglary and knew he was not allowed to possess a firearm, but he denied killing Carswell. When asked about Lewis's testimony, Willie stated that she was mad at him for sleeping with her coworkers.

¶7. Willie was convicted on all three counts. The trial court sentenced him to life imprisonment in the custody of the MDOC for Count I; ten years for Count II, to run consecutively to his life sentence in Count I; and five years for Count VI, to run consecutively to the other sentences. Willie filed a motion for a JNOV or, in the alternative, for a new trial, which the trial court denied.

¶8. Willie argues on appeal that the court abused its discretion in qualifying McIntire as an expert and in admitting his testimony.

**DISCUSSION**

¶9. At trial, defense counsel objected to the qualification of McIntire as an expert. The trial court overruled the objection, finding: "[B]ased on the witness's experience and training, which was adequate and standard, I think, across the state, with regard to our forensic scientists with the sub[-]specialty of toolmark identification and firearm

4

examination, I also find he has . . . utilized reliable methods that are standard in practice."
On appeal, Willie argues that the trial court erred in qualifying McIntire as an expert witness and in allowing him to testify that the casing found at the murder scene matched the gun recovered in Willie's possession. He claims McIntire's testimony was conclusory, and the scientific methods used by the expert were "questionable," particularly noting McIntire's failure to provide a margin-of-error rate regarding the science of firearm identification and to take any photographs. He also contends any error in the admissibility of McIntire's testimony "cannot be deemed harmless."

¶10.    Willie raised this issue in another case, *Willie v. State*, 204 So. 3d 1269 (Miss. 2016), which involved his conviction for a murder in Panola County. However, because defense counsel in that case failed to make any objections to the expert's testimony, the Mississippi Supreme Court found the issue was procedurally barred and made no findings as to the merits of the claim.[4] However, the supreme court did determine that counsel's failure to object was not ineffective assistance because it fell "within the scope of trial strategy." *Id*. at 1275 (¶19).

¶11.    In a recent case, *Parker v. State*, 2016-KA-1502-COA, 2018 WL 1602585 (Miss. Ct. App. April 3, 2018), *reh'g denied* (Sept. 4, 2018), this Court considered Shannon Parker's claim that the trial court erred in allowing the testimony of a forensic expert on firearm and toolmark identification. Parker filed a pretrial motion to exclude the expert's testimony,

_____

[4] McIntire was also the forensic expert witness at Willie's other trial.

5

asserting it was unreliable and attaching a 2008 National Academy of Science (NAS) report. *Id*. at \*3 (¶13). The trial court deferred ruling on the motion until after counsel had an opportunity to question the expert during voir dire; however, defense counsel subsequently stated at trial that he had no objection to the expert's testimony. *Id*. On cross-examination, the expert was questioned about the 2008 NAS report, and he acknowledged that an examiner "should not testify in 'absolute' terms but rather should testify to a 'reasonable degree of scientific certainty.'" *Id*. Citing *Willie*, 204 So. 3d 1269, this Court found the claim was procedurally barred due to defense counsel's failure to object to the testimony. *Parker*, 2018 WL 1602585 at \*3 (¶14).[5]

¶12. Here, however, defense counsel made strenuous objections to McIntire's testimony for the reasons cited by Willie on appeal. Therefore, we will address the merits of Willie's claims. Mississippi Rule of Evidence 702 governs the admissibility of expert testimony, allowing a witness qualified as an expert to testify in the form of an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[5] Although *Parker* was a 5-5 opinion, the dissent in *Parker* objected to the case's disposition on grounds unrelated to the expert-testimony issue.

6

M.R.E. 702. Being "mindful that 'the admission of expert testimony is within the discretion of the trial court[, w]e will not reverse [a] trial court's decision to admit expert testimony unless the decision was arbitrary and clearly erroneous, amounting to an abuse of discretion.'" *Gray v. State*, 202 So. 3d 243, 256 (¶46) (Miss. Ct. App. 2015) (quoting *Bateman v. State*, 125 So. 3d 616, 625 (¶28) (Miss. 2013)). In *Mississippi Transportation Commission v. McLemore*, 863 So. 2d 31 (Miss. 2003), the Mississippi Supreme Court adopted the *Daubert* standard for determining the admissibility of expert witness testimony, stating:

> The [United States Supreme] Court in *Daubert* adopted a non-exhaustive, illustrative list of reliability factors for determining the admissibility of expert witness testimony. The focus of this analysis "must be solely on principles and methodology, not on the conclusions they generate." These factors include whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community. The applicability of these factors depends on the nature of the issue, the expert's particular expertise, and the subject of the testimony. The *Daubert* Court emphasized that the reliability inquiry contemplated by Rule 702 "is a flexible one."

*Id*. at 36-37 (¶13) (citations omitted).

¶13.    Willie argues McIntire was not qualified under *Daubert* and Rule 702. Specifically, he claims the validity of McIntire's testimony has been called into question by "recent developments in the scientific community," citing a 2008 NAS report (as discussed in *Parker*), a 2009 NAS report of forensic science, as well as a 2016 report from the President's

7

Council of Advisors on Science and Technology. The 2008 report cautioned:

> Conclusions drawn in firearms identification should not be made to imply the presence of a firm statistical basis when none has been demonstrated. Specifically, . . . examiners tend to cast their assessments in bold absolutes, commonly asserting that a match can be made to the exclusion of all other firearms in the world." Such comments cloak an inherently subjective assessment of a match with extreme probability statement that has no firm grounding and unrealistically implies an error rate of zero.

The 2016 report stated:

> Whether firearms analysis should be deemed admissible based on current evidence is a decision that belongs to the courts. If firearms analysis is allowed in courts, the scientific criteria for validity as applied should be understood to require clearly reporting the error rates seen in one appropriately designed black-box study. Claims of higher accuracy are not scientifically justified.

Willie contends that the State treated McIntire's opinion "as merely a conclusion" and "did not cache [his] conclusion in terms of a 'reasonable degree of certainty.'" Willie cites *United States v. Glynn*, 578 F. Supp. 2d 567 (S.D.N.Y. 2008), in which the district court considered whether to admit testimony of a ballistics expert. The district court reasoned that "ballistic examination . . . lacks the rigor of science [and] suffers from greater uncertainty than many other kinds of forensic evidence." *Id*. at 574. But the court also acknowledged that such testimony had "garnered sufficient empirical support as to warrant its admissibility." *Id*. Therefore, it ruled that the expert would be allowed to testify only that the "firearms match was 'more likely than not,'" which would satisfy Federal Rule of Evidence 401 "without overstating the capacity of the methodology to ascertain matches." *Id*. at 574-75.

¶14. During direct examination of McIntire, the State asked:

8

Q.      Okay. And what determination did you reach, to a *reasonable degree of scientific certainty*, as to the class characteristics of the particular gun as it relates to the casing? So 7A to State's Exhibit 8, what conclusion or opinion did you reach, to a *reasonable degree of scientific certainty*, as it relates to that?

[Defense]:   For the record, we'll renew our objection.

A.      The class characteristics that Mr. Williams described, they are the same. The firearm in State's Exhibit 7A is a 9-millimeter Ruger caliber, and the cartridge case that's in State's Exhibit 8 is a 9-millimeter Ruger caliber cartridge casing.

Q.      And to a *reasonable degree of scientific certainty*, did you reach a conclusion as to the individual characteristics as it relates to the casing in State's Exhibit 8, as well as the gun in State's Exhibit 7A?

A.      Yes, I did.

Q.      And what was that conclusion, to a *reasonable degree of scientific certainty*, that you reached?

[Defense]:   We will renew our objection.

[COURT]:   Overruled.

A.      That the cartridge case that's in State's Exhibit 8 was fired in the gun that's in State's Exhibit 7A.

(Emphasis added). Thus, it is evident that McIntire determined that the casing and gun matched to a "reasonable degree of scientific certainty."

¶15.   Willie further argues, however, that if such science "is inherently unreliable, what does a reasonable degree of scientific certainty even mean?" Willie particularly takes issue with McIntire's failure to provide a margin-of-error rate related to the method he utilized.

9

When asked by defense counsel about the margin of error, McIntire replied: "I understand what you're talking about with 'margin of error,' but we do not have a reporting procedure for a margin of error." But McIntire also clarified that he was not saying "there was not a margin of error in the field."

¶16. We do not find McIntire's failure to cite any margin of error warrants reversible error as asserted by Willie. The United States Supreme Court noted in *Daubert*:

> The inquiry envisioned by [Federal] Rule [of Evidence] 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Daubert*, 509 U.S. at 594-95. Since *Glynn*, other courts have supported the admissibility of such testimony and upheld an examiner's determination that a bullet or casing came from the defendant's gun to within a "reasonable degree of scientific certainty." In *United States v. Otero*, 849 F. Supp. 2d 425, 435 (D.N.J. 2012), the district court denied a defendant's motion to exclude a firearms and toolmark expert's testimony, finding it both relevant and reliable under Rule 702. The court noted: "Even courts which have criticized the bases and standards of toolmark identification have nevertheless concluded that [The Association of Firearm and ToolMark Examiners (AFTE)] theory and its identification methodology is widely accepted among examiners as reliable and have held the expert identification evidence to be admissible, albeit with limitations." *Otero*, 849 F. Supp. 2d at 435; *see also United States v. Ashburn*, 88 F. Supp. 3d 239, 247 (E.D.N.Y. 2015) ("Although some commentators

have questioned the assumptions and subjectivity inherent in toolmark and firearms identification, . . . the AFTE methodology remains a primary approach in the field, and even after the publication of the NAS Report, courts have viewed the methodology as accepted by the field."); *People v. Rodriguez*, 79 N.E. 3d 345, 356-57 (Ill. Ct. App. 2017) (stating the 2009 NAS report did not "so undermine[] the reliability of ballistics evidence that it has ceased to be 'generally accepted' in the scientific community").

¶17.    The Louisiana Court of Appeals recently considered this issue in *State v. Lee*, 217 So. 3d 1266 (La. Ct. App. 2017). Like McIntire, the expert witness had years of experience, was certified by the AFTE, and had routinely passed proficiency tests. *Id.* at 1273. The expert witness also testified that he "was not aware of any error rate with respect to the type of testing he performed." *Id*. at 1274. Addressing *Daubert* and Rule 702, the appellate court found the testimony offered by the expert to be "relevant" and "reliable," stating:

> Based on the foregoing, it cannot be said that the jurisprudence supports Defendant's assertion that the scientific community has rejected the methodology and theory of firearms identification. To the contrary, even after publication of the [2009] NAS Report, courts have addressed, in detail, the reliability of such testimony and ruled it admissible, although to varying degrees of specificity.

*Id*. at 1275-78.

¶18.    We conclude that the trial court did not err in qualifying McIntire as an expert and allowing his testimony. Consequently, Willie's harmless-error argument is moot. We affirm Willie's convictions and sentences.

¶19.    **AFFIRMED.**

11

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**