# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01204-COA

**JIMMIE RAY FIELDS A/K/A JIMMY RAY FIELDS A/K/A JIMMY FIELDS**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/02/2024 |
| TRIAL JUDGE: | HON. CALVIN D. TAYLOR |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | ANGEL MYERS McILRATH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/04/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND LASSITTER ST. PÉ, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.    A jury convicted Jimmie Ray Fields[1] in the George County Circuit Court of twenty-five counts of child exploitation for possessing and viewing visual depictions of actual children engaging in sexually explicit conduct.  Fields now appeals, contending that his laptop searches were illegal because the search warrant was issued in George County, but the forensic analysis was performed in Harrison County.  Fields further contends that the

---

[1]  The record on appeal reveals alternative spellings of "Jimmy" in reference to the Appellant; however, the trial proceedings show his name was spelled "Jimmie" in the indictment, jury verdicts, and judgment of conviction and sentencing.  We use the spelling in the judgment from which the appeal was taken.

circuit court erred by failing to instruct the jury on the theory of constructive possession because he was not in direct possession of the images. Having reviewed the record, considered the arguments of the parties, and applied the relevant precedent, we affirm the convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

### Initial Laptop Repair and Discovery of Suspected Child Sexual Abuse Materials ("CSAM")

¶2. Jimmie Ray Fields took an HP laptop to Uni-Tech, a computer repair shop, in Lucedale, Mississippi (in George County), on June 30, 2021,[2] because the laptop would power down when he slightly moved the screen. Fields returned to Uni-Tech on September 2, 2021, but this time he took a Toshiba laptop that had sustained liquid damage from a coffee spill. Alexander Lawrence, a service technician at Uni-Tech, testified that although David Fields was the name listed on the receipt, Jimmie Ray Fields was the person who signed the receipt and dropped off the laptops.[3] Lawrence recommended data recovery, i.e., pulling any content that Fields may need and transferring it to another computer, because the cost of repairing the Toshiba outweighed the device's value. Jimmie Ray Fields consented to the data recovery process on the Toshiba, agreeing for Uni-Tech to proceed.

¶3. During the data recovery, Lawrence testified that he discovered images that he

---

[2] The date on the invoice/receipt was incorrect. According to trial testimony, the date marked on the receipt showed June 30, *2020*, but it should have read June 30, *2021*.

[3] The service order lists the account name under David Fields, Jimmie Ray Fields's brother. Despite the receipt listing one name, Jimmie never asserted that this was David's device. Lawrence testified that Uni-Tech has a "database of clients that come in and whatever relative – if they have a relative, we just put them under the relative."

believed to be "explicit child pornography." Lawrence then asked a co-worker to view the images to confirm his belief. After viewing the images, the co-worker also agreed that this was child pornography. The matter was reported to Uni-Tech's owner, Ralph Bender, and he contacted the Lucedale Police Department. Lawrence stated that the images were in the favorites folder of the Toshiba and "pretty much in plain si[ght]."

¶4.     Joe Apker, Chief of the Lucedale Police Department, arrived at Uni-Tech, reviewed the images, and confirmed that the material was child sexual abuse material (CSAM). Apker noted that the children in the pictures appeared to range in age from toddlers to early teenagers. As a result of the discovery of the CSAM, Apker then seized both the Toshiba and HP laptops and immediately transported them to the Lucedale Police Department for further processing into the evidence lab. According to Apker's testimony, on the next day, September 29, 2021, he contacted the Mississippi Attorney General's Office's Cyber Crime Division (CCD) about the CSAM investigation because the Lucedale Police Department "just [doesn't] have the technology resources to investigate a case like this."

¶5.     David Allen came from the Attorney General's Office to the Lucedale Police Department and assumed responsibility for the investigation. Allen was employed as Chief Investigator for the CCD, but he was based out of the Federal Bureau of Investigation's (FBI) office in Gulfport, Mississippi (Harrison County), as a Task Force Officer.[4] Allen testified that he retrieved the two laptops from Captain Apker, and he identified them both

_____

[4] Allen testified that he did forensics work as a task force officer with the FBI. Prior to that, for a year and a half, he was assigned to homeland security investigations in Gulfport, where he was a cybercrime investigator. He is also a certified law enforcement officer and certified digital evidence forensic examiner.

during his trial testimony. Further, Allen testified "that while at Lucedale PD, I wrote up search warrants based on the information I had to . . . allow me to look at the date on those items." A justice court judge signed his search warrants. Accordingly, Allen took possession of the two laptops, transported them to his office in Gulfport (Harrison County), and using his digital forensics equipment, began triage forensic procedures to determine their content. During his forensic analysis, Allen discovered over 1,000 CSAM files and linked Fields to both devices through its user data.[5] After additional examinations of both laptops and discovering that they contained a large amount of child exploitation material, Allen obtained the signature of a George County Justice Court judge for the search warrant of Fields's residence.

¶6. Allen's search warrant was for Fields's residence, located in Lucedale (George County). In order to execute the search warrant, Allen assembled a team specially trained in conducting search warrants of this nature. Meanwhile, Allen asked the Uni-Tech technicians to arrange a time for Fields to retrieve his laptops. Then, on October 5, 2021, Fields arrived at Uni-Tech. With Allen and the other officers present, Allen read Fields his *Miranda* rights;[6] Fields agreed to waive his rights and voluntarily provided Allen with a statement. This interaction was recorded by Uni-Tech's in-house recording system, which was played for the jury during trial.

---

[5] Allen explained during his testimony that one part of forensics includes "attribution" on the computers, i.e., who was using the computer, whose accounts are on it, who it is registered to, and who is believed to have been on the computer at the time.

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

**Fields's Interviews with Allen**

¶7.     Allen interviewed Fields at Uni-Tech and during the search of his house. During these interviews, Fields admitted that no one else used his computers, that he had burned a dozen DVDs containing CSAM, that he had hundreds more DVDs in his storage rooms, and that the CSAM materials were his "hobby." These interviews were recorded on Allen's bodycam, which was played for the jury.

**Fields's Residential Search (George County)**

¶8.     Officers discovered a third laptop in Fields's living room during the search of his house. The laptop was actively streaming a slideshow of CSAM images onto a connected television. The laptop and television were placed on a table directly in front of the couch where Fields slept. During Fields's interview with Allen, Fields explained that he was using a slideshow program that allowed him to view the pictures for ten seconds and view them again for additional seconds—ultimately giving him more time to look at those photos. Agents also discovered a variety of physical media and recording devices, including SD cards, CDs, DVDs, camcorders, and a Samsung cell phone. This discovery also included folders with written stories that described child sex abuse.

**Storage Units Search (George County)**

¶9.     During the interview conducted during the home search, Fields disclosed to Allen that he had additional CSAM media items in two storage units, both units located in George County. Fields gave written consent for Allen to search the storage units, he provided Allen with the storage keys, and he accompanied the agents during the storage search. According

5

to Allen's testimony, the storage units contained "hundreds of DVDs that appeared to contain child exploitation material." Agents discovered additional stories describing child sexual abuse. The author wrote several stories in first-person, identifying himself as "Uncle Jimmie." Fields's name was listed at the top of each document.

¶10. Fields's name was also written on the DVDs, along with handwritten codes. When asked to explain the codes, Fields interpreted and explained the code meanings. For example, a DVD found in one of the HP laptops had the following code handwritten on it: "EMVRNVRSMM7D 7 files VRSMM style (extra copy)." Fields explained that "VRS" meant "various" and "MM" meant a "previous video was cut into screenshots." Further, Fields stated the DVD content was child pornography and that there was "plenty" of CSAM on it. Allen and his team identified the handwriting as consistent with Fields's handwriting.

¶11. Investigator Allen submitted the digital evidence to the National Center for Missing and Exploited Children (NCMEC). The Center responded with a detailed, 619-page report confirming that 11,714 of the images and 121 of the videos included victims of "actual children."

**The Indictment**

¶12. On December 27, 2022, a George County grand jury returned an indictment charging Fields with twenty-five counts of child exploitation:

> No person shall, by any means including computer, knowingly possess or knowingly access with intent to view any photograph, drawing, sketch, film, video tape or other visual depiction of an actual child engaging in sexually explicit conduct.

Fields was charged with violating Mississippi Code Annotated section 97-5-33(5) (Rev.

6

2020).

**The Jury Trial**

¶13.    A jury trial was held on October 1-2, 2024.  Witnesses Alexander Lawrence, Joe Apker, and David Allen testified, and the following items were entered into evidence: a Toshiba hard drive (500GB), a Western Digital hard drive (1TB), a Toshiba hard drive (1TB), a Verbatim optical disc, 3 Secure Digital (SD) cards, and 18 optical discs.

¶14.    After the State rested, Jimmie Ray Fields did not testify, nor were any other witnesses called on his behalf.  The Defense rested.

**Jury Instructions**

¶15.    During the jury instructions conference, Fields's counsel proposed jury instruction D-5 but subsequently withdrew it.  Jury Instruction D-5 would have instructed the jury on actual and constructive possession.  In his brief on appeal, Fields conceded that the instruction was defective because it misidentified the alleged child pornography as a weapon.

**Final Judgment and Sentencing**

¶16.    On October 2, 2024, a George County jury found Fields guilty of twenty-five counts of child exploitation.  Fields was sentenced to serve forty years day-for-day on each charge in the Mississippi Department of Corrections.  Each sentence was set to run concurrently with each other.  Fields was ordered to pay a fine of $1,000 for each count, $100 to the Crime Victims Compensation Fund, $1,000 to the Mississippi Children's Trust Fund, $1,000 to the Human Trafficking Fund, and all court costs.  Fields was also ordered to register as a sex offender.

**Motion for a New Trial**

¶17. On October 11, 2024, Fields filed a motion for a new trial or, in the alternative, for judgment notwithstanding the verdict. Fields contended that the evidence the State presented by the State was insufficient and that he did not know he was breaking the law. On the same day, the court filed an order denying the motion for a new trial or, in the alternative, for judgment notwithstanding the verdict.

¶18. On October 17, 2024, Fields appealed, contending that the State conducted an illegal search of his laptops and that he was entitled to a constructive possession jury instruction.

## DISCUSSION

### I.    Lawfulness of Searching Laptops

¶19. Fields contends that the searches of the two laptops were illegal because a George County Justice Court judge issued the search warrant, yet the forensic examination was conducted in Harrison County. In other words, Fields maintains that this forensic examination exceeded the scope of the warrant's geographic authorization. As a result, he argues that any evidence derived from the searches—i.e., items recovered from the repair shop, his residence, and the storage units—was inadmissible. The State, on the other hand, argues that Fields neither filed a motion to suppress the evidence nor asserted at trial that the warrant was unlawfully executed. Moreover, Fields did not include the warrant or supporting affidavit as part of the appellate record. Fields concedes that he did not object to the allegedly illegal search at trial; thus, the trial court did not have an opportunity to address it. But he requests this Court to consider the matter for the first time on appeal, relying on the

plain error doctrine, pursuant to Mississippi Rule of Evidence 103(f).[7]

¶20.     A trial judge will not be found in error on a matter not presented to him or her for decision. *McVay v. State*, 385 So. 3d 1280, 1292 (¶30) (Miss. Ct. App. 2024). "Counsel must object contemporaneously to inadmissible evidence in order to preserve the error for appeal." *Phillips v. State*, 415 So. 3d 583, 591 (¶19) (Miss. 2025). "Issues not presented to the trial court for lack of contemporaneous objection are procedurally barred, and error, if any, is waived." *Brady v. State*, 337 So. 3d 218, 227 (¶27) (Miss. 2022). "Generally, a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because otherwise it is procedurally barred." *Spiers v. State*, 361 So. 3d 643, 662 (¶69) (Miss. 2023) (quoting *Parker v. State*, 30 So. 3d 1222, 1227 (Miss. 2010)). "'The rule that failure to object' at trial bars raising the issue on appeal 'applies to Fourth Amendment claims as well.'" *Stewart v. State*, 367 So. 3d 985, 987-88 (¶9) (Miss. 2023). Therefore, because Fields failed to make an objection at trial, he is procedurally barred from raising this issue on appeal, "and our review is restricted to the plain-error doctrine." *Hollingsworth v. State*, 269 So. 3d 456, 458 (¶7) (Miss. Ct. App. 2018).

¶21.     "The plain error doctrine is employed only in situations when a defendant's substantive or fundamental rights are affected." *Walker v. State*, 385 So. 3d 457, 465 (¶24) (Miss. Ct. App. 2023) (internal quotation marks omitted) (quoting *Flora v. State*, 925 So. 2d

---

[7] Mississippi Rule of Evidence 103(f) provides:

Taking Notice of Plain Error. A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved.

797, 811 (¶42) (Miss. 2006)). "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quoting *Johnson v. State*, 155 So. 3d 733,738-39 (¶8) (Miss. 2014)). "To determine whether plain-error has occurred, the reviewing court must determine (1) if the trial court deviated from a legal rule; (2) whether that error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial." *Phillips*, 415 So. 3d at 596 (¶48) (citing *McGee v. State*, 953 So. 2d 211, 215 (Miss. 2007)).

¶22. Under Mississippi law, our courts have consistently recognized that forensic examinations may occur outside the jurisdiction in which the warrant was issued, and their results are admissible, if the items were properly seized pursuant to a valid search warrant. *See Follett v. State*, 380 So. 3d 961, 966 (¶11) (Miss. Ct. App. 2024); *Friley v. State*, 366 So. 3d 959, 962 (¶5) (Miss. Ct. App. 2023); *Ferguson v. State*, 266 So. 3d 1032, 1034-35 (¶10) (Miss. Ct. App. 2018); *Willie v. State*, 274 So. 3d 934, 935-36 (¶3) (Miss. Ct. App. 2018).

¶23. In *Follett*, 380 So. 3d at 964 (¶1), the defendant was tried before a jury in the Harrison County Circuit Court and convicted of two counts of child exploitation, pursuant to section 97-5-33(5). The State began investigating Follett when it was contacted by the NCMEC about a cybertip it received from Google. *Id*. at (¶3). Thus, an investigator obtained a search warrant for Follett's home in Biloxi, Mississippi, with this information. *Id*. at 966 (¶10). David Allen, a digital forensic examiner with the Attorney General's Cyber Crime Division and part of the team, testified that during the search, he found a laptop that contained

10

hundreds of images of child pornography. *Id*. at (¶11). He also found a cell phone and conducted an on-site triage of it. *Id*. Investigators seized both the laptop and the cell phone, sending both to the Attorney General's Office to be digitally examined. *Id*. The court allowed the results of the forensic tests to be admitted.

¶24.   Likewise, in *Friley*, 366 So. 3d at 961 (¶1), the defendant was found guilty by a Warren County Circuit Court jury of one count of felony child abuse, pursuant to Mississippi Code Annotated section 97-5-39(2)(a)(iii) (Rev. 2014). After the minor's mother found images and videos of child abuse on the defendant's computer, she contacted the Warren County Sheriff's Department. *Id*. at 962 (¶5). A search warrant was executed for Friley's room in his parent's house. *Id*. During the search, law enforcement collected numerous items that supported the alleged child abuse, including a USB drive, a Nikon camera, and a laptop. *Id*. Investigator Dykes with the Attorney General's task force on crimes against children, sent Friley's laptop to the Mississippi Attorney General's Cyber Crime Division for forensics. *Id*. at (¶9). On the USB drive, the AG's office recovered videos and images of the minor. *Id*. at (¶5). These items from the phone were introduced into evidence. *Id*. at (¶6).

¶25.   So too, in *Willie*, 274 So. 3d at 935 (¶3), the Tunica County Sheriff's Department received information linking a suspect to a Tunica County murder. A search warrant was issued for the suspect's apartment, and his girlfriend's maroon Equinox SUV. *Id*. A 9-millimeter handgun was discovered inside the SUV's glove compartment, and a loaded magazine with nine rounds was located above the sun visor. *Id*. The gun was sent to the

Mississippi Forensics Laboratory in Hinds County for ballistics testing. *Id*. The court allowed the results of the forensic tests to be admitted. *Id*.

¶26. In the case at hand, Fields contends that the circuit court deviated from a legal rule and committed plain error in admitting the results of the Attorney General's forensic examination conducted in Harrison County pursuant to a George County warrant. However, Fields confuses the execution of a search warrant with the subsequent forensic analysis of seized evidence. The forensic examination that occurred in Harrison County took place after the search warrant had already been properly executed in George County. According to Black's Law Dictionary, a search warrant is "a judge's written order authorizing a law-enforcement officer to conduct a search of a specified place and to seize evidence." *Search Warrant*, Black's Law Dictionary 1624 (12 ed. 2024). The term execution refers to the "act of carrying out or putting into effect (as a court order)." *Execution*, Black's Law Dictionary 712 (12 ed. 2024). The distinction is paramount in this case: executing a search warrant, i.e., conducting the search and seizing evidence, differs drastically from analyzing the seized evidence. Here, the warrant for the laptops was properly executed in George County, the county where Fields's house, his storage units, the Lucedale Police Department, and the Uni-Tech repair shop were located. Moreover, Fields fails to cite any caselaw suggesting that forensic processing must occur within the issuing court's county or any caselaw that suggests that the analysis of seized evidence in a different county is unlawful.

¶27. Mississippi precedent establishes that the analysis of seized evidence in another county is both common practice and legally permissible, particularly for digital devices

requiring specialized examination tools. Here, the initial discovery of CSAM images occurred when Alexander Lawrence, the technician at Uni-Tech in George County, observed child sexual abuse while servicing Fields's laptop. After Lawrence's coworker confirmed the presence of illegal images, the matter was reported through the proper channels to Chief Apker of the Lucedale Police Department, who subsequently contacted Investigator Allen of the Attorney General's Cyber Crime Division. Following his preliminary review confirming the presence of illegal CSAM, Allen seized the laptops pursuant to a George County search warrant for comprehensive forensic analysis at his specialized Cyber Crime office in Harrison County. This procedure mirrors established precedent in multiple Mississippi cases. As noted above in *Follett*, *Friley*, and *Willie*, Mississippi courts routinely approve transporting and analyzing seized evidence pursuant to a properly executed search warrant across county lines when specialized equipment or expertise is required.

¶28. Fields relies on the Kansas case of *State v. Rupnik*, 125 P.3d 541, 546 (Kan. 2005), to support his argument that the search warrant was illegally executed when the laptops were analyzed in Harrison County. This reliance is misplaced. In *Rupnik*, a magistrate judge in Wabaunsee County issued the search warrant, but it was executed—and the property seized—in Shawnee County. *Id*. Conversely, in the instant case, the search warrant was properly issued by a George County Justice Court judge, and the laptops were lawfully seized within that same county. The subsequent analysis of lawfully seized evidence outside the issuing county does not render the search illegal, and Fields has failed to establish plain error. To hold otherwise would restrict law enforcement's ability to analyze seized evidence.

13

¶29. Furthermore, "[p]rejudice is often lacking when the weight of the evidence against a defendant is overwhelming." *Spiers*, 361 So. 3d at 657 (¶42) (quoting *Moffett v. State*, 156 So. 3d 835, 870 (Miss. 2014)). When determining whether sufficient evidence supports a conviction, this Court must decide whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Naylor v. State*, 248 So. 3d 793, 796 (Miss. 2018)). The prosecution is given the benefit of all favorable inferences reasonably drawn from the evidence. *Id.*

¶30. Again, notwithstanding the procedural bar, in the instant case, the overwhelming weight of the evidence against Fields negates any prejudice from the challenged forensic examination's location. The evidence establishing Fields's guilt was both extensive and compelling. First, Fields personally delivered the laptops to the repair shop, signed the corresponding service order, and later returned to retrieve the laptops, establishing his ownership and control. Second, during a subsequent interview with Investigator Allen, Fields admitted that the CSAM discovered on the laptops belonged to him. A recorded confession was played for the jury during trial. Third, Fields voluntarily disclosed that he had additional CSAM stored in two storage units and provided investigators with the keys to access them. Fourth, when agents executed the search warrant at Fields's residence, Allen testified that CSAM was actively streaming from a third laptop onto a connected television, demonstrating the ongoing illegal activity. Finally, investigators recovered personal identifying information linking Fields to the user data on the laptops, confirming his use and

14

control of the devices. In short, given the overwhelming weight of the evidence against Fields, including his own admissions, any alleged error regarding the location of the forensic analysis could not have prejudiced his trial outcome or resulted in a manifest miscarriage of justice.

## II. Failure to Provide a Constructive Possession Jury Instruction

¶31. In Fields's second claim of error, he contends that the trial court failed to provide a constructive possession jury instruction. However, Fields's counsel initially proposed but subsequently withdrew the constructive possession jury instruction (D-5). Fields claims that the absence of this instruction prejudiced his outcome and therefore meets the threshold for plain error. On the other hand, the State contends that this argument is without merit because Fields did not object to the missing instruction in order to preserve the issue for appellate review, (2) defense counsel withdrew the proposed constructive possession jury instruction, and (3) Fields confessed to possessing the CSAM, thereby eliminating the need for a constructive possession instruction.

¶32. Under the invited-error doctrine, "a defendant cannot complain on appeal of alleged errors invited or induced by himself." *Jennings v. State*, 311 So. 3d 712, 718 (¶17) (Miss. Ct. App. 2021). The supreme court has explained that the purpose of this doctrine is to "bind trial counsel to strategic decisions inducing judicial rulings with the purpose of obtaining favorable judgments for their client." *Id*. (quoting *State v. Hargrove*, 293 P.3d 787, 790 (Kan. Ct. App. 2013)). For example, in *Washington v. State*, 355 So. 3d 798, 801 (¶2) (Miss. Ct. App. 2023), the defendant was accused of robbing and shooting the victim after a drug

purchase. During trial, Washington entered into evidence a gun he possessed when he was arrested. *Id*. at 802-03 (¶15). On appeal, Washington argued that the trial court erred when it admitted the gun into evidence even though no evidence tied that particular gun to the crimes. *Id*. at 809 (¶39). In rejecting Washington's claim, we stated:

> Under the invited error doctrine, Washington cannot enter the gun into evidence and then complain on appeal that the gun's admission was irrelevant. *Jennings*, 311 So. 3d at 718 (¶17). "To hold otherwise would allow the defendant to invite error and later take advantage of it on appeal." *Ross v. State*, 288 So. 3d 317, 324 (¶27) (Miss. 2020) (quoting *Ambrose v. State*, 254 So. 3d 77, 112 (102) (Miss. 2018)). Thus, we decline to find any error on this final issue.

*Id*. at (¶42).

¶33. Here, the record establishes that the error of which Fields now complains, his failure to receive a constructive possession jury instruction, was initially proposed but subsequently withdrawn by his counsel. Fields's counsel initially proposed jury instruction D-5, which defined both constructive and actual possession. However, after proposing this instruction, he later withdrew it. The withdrawn instruction D-5 stated in pertinent part:

> The Court instructs the jury that in reaching your verdict you are to consider all of the evidence concerning the entire case and the circumstances surrounding the crime. One of the issues in this case is did JIMMY RAY FIELDS. The Court instructs the jury that there are two types of possession, 1, actual possession and 2. Constructive possession. Actual possession involves the possession of the prohibited item be on the person. Constructive possession is that a person has possession by exclusive control over the area where the prohibited item is located. The State has the burden of proving beyond a reasonable doubt, that JIMMY RAY FIELDS had either actual or constructive possession of the prohibited items. If, after considering all of the evidence concerning the crime, you are not convinced beyond a reasonable doubt that he had actual or constructive possession of a weapon, then you must find him Not Guilty.

Fields counsel's strategic decision to withdraw this proposed instruction constitutes invited error. Moreover, albeit defective because the instruction misidentified the item allegedly possessed as a weapon instead of child sexual abuse material, Fields is still bound by his counsel's strategic decision to withdraw the constructive possession instruction. This tactical decision to proceed without the constructive possession instruction cannot now be the reason to claim prejudice from the instruction's absence.

¶34. Notwithstanding the invited-error doctrine, Fields is still unable to claim plain error. His recorded confession admitting ownership of the CSAM was played to the jury, established direct possession, and eliminated his right to a constructive possession jury instruction. Accordingly, Fields is responsible for the absence of this jury instruction, and Fields's recorded admission to owning the CSAM eliminates his ability to claim his trial outcome was prejudiced or resulted in a manifest miscarriage of justice. Thus, he cannot now, on appeal, complain of this alleged error.

**CONCLUSION**

¶35. The search warrant was properly executed in George County, and the subsequent forensic analysis conducted in Harrison County was proper. Accordingly, the circuit court committed no plain error. Further, because of the overwhelming weight of the evidence against Fields, he fails to show how the errors he alleges occurred, including counsel's failure to object, prejudiced the outcome of his trial. Moreover, the absence of a constructive possession jury instruction was his and his counsel's choice, and regardless, Fields's admission to owning the CSAM precluded a constructive possession instruction.

17

Accordingly, we affirm the judgment of conviction and sentencing.

¶36.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**